ATTORNEYS FOR APPELLANT
Steve Carter
Attorney General of Indiana

Christopher L. Lafuse
Deputy Attorney General

Nicole M. Schuster
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Bryan R. Williams
Eisele Lockwood & Williams
Anderson, Indiana

_____

### In the
# Indiana Supreme Court

_____

No. 48S02-0501-CR-5

STATE OF INDIANA,

Appellant (Respondent below),

v.

HEATH A. SPILLERS,

Appellee (Petitioner below).

_____

Appeal from the Madison Superior Court, Division III, No. 48D03-0302-FA-049
The Honorable Thomas Newman, Jr., Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 48A02-0401-CR-76

_____

**May 23, 2006**

**Rucker, Justice.**

Heath Spillers was charged with dealing in cocaine as a Class A felony. The trial court granted Spillers' motion to suppress and on review the Court of Appeals reversed. We granted transfer to address the application of the rule declaring that an informant's "declarations against penal interest" are sufficient to establish the informant's credibility for the issuance of a search warrant.

## Facts and Procedural History[1]

In the early afternoon hours of February 5, 2003 Detective Earley of the Anderson Police Department executed a warrant to search the home of Aaron Craib. Detective Jake Brooks, also of the Anderson Police Department, assisted in the search. The detectives arrested Craib for either dealing in or possession of cocaine upon locating more than three grams of the drug in his home. Tr. at 4. After his arrest Craib informed the detectives that Heath Spillers was his drug source. According to Craib, he had been obtaining cocaine from Spillers since December 2002 and had done so over ten times, most recently earlier that day. Exh. at 5. Craib also gave the detectives the address at which Spillers was staying with his girlfriend and the make and model of Spillers' car.

Armed with this information Detective Brooks sought a warrant to search Spillers' home. A hearing for such purpose was conducted before a regularly sitting trial judge of Madison County. Detective Brooks testified concerning the information Craib relayed to him, and the judge issued the warrant. In pertinent part Detective Brooks testified as follows:

> [Aaron Craib] has given statement to . . . being involved in the use and sells [sic] of cocaine. Specifically, he gave a statement about the person that he obtained the cocaine from . . . he received it about 4:30 P.M. today. During this transaction the person had approximately an ounce of cocaine on his person. The person we took into custody advised he bought a quarter of an ounce of

---

[1] In addition to the transcript of the proceedings, which is a recording of the suppression hearing, pertinent facts are also contained in the transcript of the search warrant hearing. This transcript was introduced as evidence at the suppression hearing and transmitted on appeal as a separate document labeled "Exhibits." We refer to the transcript of the suppression hearing as "Tr." and the transcript of the search warrant hearing as "Exh.".

> cocaine from him today. Then he also bought a half of an ounce yesterday from this individual.
>
> . . .
>
> [Craib also] gave a statement advising that he has been obtaining cocaine from this person [Heath Spillers] since December of 2002. He advised that he has obtained the cocaine over ten (10) times from this person in the past, specifically 4:30 today. . . . [T]he person is from Fort Wayne, Indiana. He stays at the address listed in the search warrant with his girlfriend.
>
> . . .
>
> Mr. Craib has been to this apartment complex within the last couple of weeks. . . . Each time he has seen cocaine there.

Exh. at 4-6. The detective also testified that Craib informed the officers that Spillers was driving a 1994 white Pontiac and provided the license plate number. Id. at 5. Upon executing the search warrant, officers discovered a gym bag containing digital scales along with cocaine weighing approximately thirteen to fourteen grams. According to Detective Brooks, Spillers admitted the gym bag belonged to him.

Spillers was arrested and ultimately charged with dealing in cocaine as a Class A felony. Prior to trial he moved to suppress the cocaine. And following an evidentiary hearing, the trial court entered an order granting Spillers' motion. Although disagreeing with the ruling, the State did not timely request the trial court to certify its order for interlocutory appeal. Thus, the State thereafter filed a belated motion to certify which the trial court granted. After the Court of Appeals declined to accept jurisdiction, the State filed a motion to nolle prosequi the charge because it could not "proceed on this cause without the evidence that was suppressed." App. at 57. The trial court granted the motion and thereafter the State appealed. On review the Court of Appeals reversed the trial court's judgment. See State v. Spillers, 816 N.E.2d 67 (Ind. Ct. App. 2004). In doing so the court examined conflicting Court of Appeals opinions on the question of when and under what circumstances hearsay statements may support probable cause for the issuance of search warrants. Having previously granted transfer we now reverse the judgment of the trial court.

## Discussion

## I.

## Standard of Review

In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. Id. at 238-39. A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. Houser v. State, 678 N.E.2d 95, 99 (Ind. 1997). A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. Id. at 98. Although we review de novo the trial court's substantial basis determination, we nonetheless afford "significant deference to the magistrate's determination" as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination. Id. at 98-99.

## II.

## Analysis

### A. *Probable Cause*

Spillers moved successfully before the trial court to suppress the evidence seized as a result of the search. Although he did not file a Brief of Appellee, Spillers essentially argued before the trial court that the facts presented to the issuing judge were insufficient to demonstrate probable cause for a search warrant because there was no evidence establishing Craib's credibility or corroborating his hearsay statements. Tr. at 9. The State responds that the detectives not only corroborated Craib's hearsay statements but also established his credibility because Craib's statements implicated him in the commission of a crime. Br. of Appellant at 4.

The Fourth Amendment to the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The text of Article I, Section 11 of the Indiana Constitution contains nearly identical language.[2] These constitutional principles are codified in Indiana Code section 35-33-5-2, which details the information to be contained in an affidavit for a search warrant.[3] Where a warrant is sought based on hearsay information, the affidavit must either:

> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

> (2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

Ind. Code § 35-33-5-2(b)(1) and (2).[4]

The trustworthiness of hearsay for the purpose of proving probable cause can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted. Jaggers v. State, 687 N.E.2d 180, 182 (Ind. 1997). These examples however are not exclusive.

---

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[3] Neither before the trial court nor before this Court on transfer does Spillers mention the Federal or State Constitutions. Although we rely on federal and state constitutional jurisprudence, we do so only in the context of applying Indiana Code section 35-33-5-2.

[4] In the case before us the request for a warrant was made not by affidavit but through a non-adversarial recorded hearing before a regularly sitting judge. This procedure is authorized by statute. See I.C. § 35-33-5-8(a)(1) (authorizing a judge to issue a search warrant without an affidavit in a non-adversarial recorded hearing before the judge if the judge receives sworn testimony of the same facts required for an affidavit).

"Depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay." Jaggers, 687 N.E.2d at 182. One such additional consideration is whether the informant has made "[d]eclarations against penal interest." Houser, 678 N.E.2d at 100.

There is no evidence in the record that Craib had given police correct information in the past. No such claim was made before the judge issuing the search warrant. And at the suppression hearing Detective Brooks testified that prior to February 5, 2003 he had not used Craib as an informant. Tr. at 6. Independent police investigation did confirm Craib's allegations concerning Spillers' address and the make and model of Spillers' car. But these facts are readily available to the general public. See Bradley v. State, 609 N.E.2d 420, 423 (Ind. 1993) (defendant's address was an "easily obtained fact"); Sellmer v. State, 842 N.E.2d 358, 362 (Ind. 2006) (tip identifying the defendant's car "provided the police with no information that was not already easily knowable by a member of the general public"). More importantly they do nothing to corroborate Craib's assertion that Spillers was the source of the drugs found in Craib's possession. See State v. Mason, 829 N.E.2d 1010, 1017 (Ind. Ct. App. 2005) (noting that although police confirmed informant's allegation concerning defendant's age, address, and color and make of defendant's truck, "[p]olice failed . . . to corroborate the 'critical claim' that [defendant] was engaged in criminal activity").

As for demonstrating some basis for Craib's knowledge that Spillers possessed drugs, Craib alleged that Spillers was his drug source. It is true that "'a statement that the event was observed firsthand' entitles the tip to 'greater weight than might otherwise be the case.'" Jaggers, 687 N.E.2d at 183 (quoting Gates, 462 U.S. at 234). However, Craib's assertion carries little weight given that there was no corroboration of his claim. And absent some other basis for concluding that Craib was a credible source his uncorroborated hearsay would not have enabled a neutral and detached magistrate to assess the credibility of Craib's alleged firsthand information. On this point the State insists that there is indeed an additional basis, namely that Craib implicated himself in criminal activity. As we observed in Houser, "[d]eclarations against penal interest can furnish sufficient basis for establishing the credibility of an informant within the meaning of Ind. Code § 35-33-5-2(b)(1)." 678 N.E.2d at 100.

6

In United States v. Harris, 403 U.S. 573 (1971), the United States Supreme Court addressed an informant's declarations against penal interest for purposes of establishing probable cause for the issuance of a search warrant. In that case, a federal tax investigator's search warrant affidavit alleged in pertinent part: (i) the defendant had a four-year reputation with the investigator as being a trafficker in "nontaxpaid distilled spirits"; (ii) during the four-year period the investigator had received numerous tips from various people concerning the defendant's activities; (iii) during this period a local constable had located a sizable stash of illicit whiskey in an abandoned house under the defendant's control; (iv) on the date of the affidavit, the investigator had interviewed and received information from an informant who the investigator found to be a "prudent person"; and (v) the investigator had obtained from the informant a sworn verbal statement to the effect that the informant had "personal knowledge of and ha[d] purchased illicit whiskey from within the [defendant's residence], for a period of more than 2 years, and most recently within the past two weeks . . . ." Harris, 403 U.S. at 575. Responding to the argument that there was no substantial basis for believing that the informant's tip was credible, a plurality of the Court determined:

> Quite apart from the affiant's own knowledge of respondent's activities, there was an additional reason for crediting the informant's tip. Here the warrant's affidavit recited extrajudicial statements of a declarant . . . that over the past two years he had many times and recently purchased 'illicit whiskey.' These statements were against the informant's penal interest, for he thereby admitted major elements of an offense under the Internal Revenue Code. . . . Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility — sufficient at least to support a finding of probable cause to search.

Id. at 583.

Although citing Harris for the proposition that statements given by informants against their penal interests are sufficient to establish probable cause for the issuance of a search warrant, courts addressing the issue have reached different conclusions in determining what statements qualify as "against penal interest." In some instances courts have determined that statements were against penal interest where after an arrest the arrestee gave police damaging information concerning a third party. In the context of a person under arrest on drug related charges the

7

damaging information was, as the case here, the name of the drug source.[5] In most instances, however, the informant either volunteered inculpatory information after being arrested for a minor offense or for an offense only indirectly related to the information given to police, or the informant was not under arrest at all and voluntarily gave police inculpatory information that the police would not otherwise have necessarily known or suspected.[6] These latter two instances are more consistent with the approach our own courts have taken in determining whether an informant's statement is against penal interest. For example, in Houser, an informant arrested on unrelated charges provided police with information about a murder that "suggested a conspiracy between [the informant] and [the defendant] to rob [the victim]." Houser, 678 N.E.2d at 100. In Creekmore v. State, 800 N.E.2d 230, 234 (Ind. Ct. App. 2003), an informant was found in possession of marijuana and psilocybin mushrooms, a schedule I controlled substance, and informed police that he received the drugs from the defendant and was "delivering drugs" to another residence and he had done so "on other occasions." In Leicht v. State, 798 N.E.2d 204, 206 (Ind. Ct. App. 2003), as the result of a search warrant an informant was found in possession of a large quantity of marijuana, and among other things informed the police that she was "getting the marijuana by the pound and selling it for [the defendant]." In Iddings v. State, 772 N.E.2d 1006, 1013 (Ind. Ct. App. 2002), an informant was found in possession of a substantial quantity of drugs and firearms, and although not arrested he told police that the defendant was a manufacturer of methamphetamine and that "he [the informant] manufactured [m]ethamphetamine" at the defendant's residence.

---

[5] See, e.g., United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986) ("[O]ne who knows the police are already in a position to charge him with a serious crime will not likely undertake to divert the police down blind alleys.") (quotation marks and citations omitted); State v. Read, 416 A.2d 684, 689 (R.I. 1980) ("A judicial officer could infer that one in the position of an arrestee would not be likely to exacerbate his circumstances by telling the arresting officers an untruthful account of his source of supply.").

[6] See, e.g., United States v. Olson, 408 F.3d 366, 371 (7th Cir. 2005) (after arrest on unrelated charges informant admitted that he "intended to steal drugs from the defendant" and provided additional information providing probable cause for a search warrant); United States v. Czuprynski, 46 F.3d 560, 564 (6th Cir. 1995) (informant approached police with information concerning defendant's use of marijuana and acknowledged smoking marijuana with the defendant "on many occasions"); Lee v. State, 2 P.3d 517, 524 (Wyo. 2000) (An informant in custody on charges of destroying property told police that earlier that day he and defendant had been trafficking in large quantities of methamphetamine. "The informant's firsthand knowledge and actual participation in numerous drug transactions with [defendant] further bolsters the informant's credibility.").

The underlying thread binding these cases together is that an informant, after arrest or confrontation by police, admitted committing criminal offenses under circumstances in which the crimes otherwise would likely have gone undetected.[7] As the plurality opinion of the Harris Court observed, "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions." Harris, 403 U.S. at 583. We believe that it is in this context that "[a]dmissions of crime . . . carry their own indicia of credibility – sufficient at least to support a finding of probable cause to search." Id. Here by contrast the informant was caught "red-handed" with drugs in his possession before naming his purported supplier. Although Craib admitted committing additional crimes of possession of cocaine, his tip was less a statement against his penal interest than an obvious attempt to curry favor with the police. See, e.g., Williamson v. United States, 512 U.S. 594, 607-08 (1994) ("A person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation."). In essence, because Craib had already been caught with cocaine in his possession, his decision to reveal his source to police did not subject him to any additional criminal liability.[8] We conclude that under the circumstances Craib's declarations were not against his penal interest and therefore did not demonstrate that Craib was a credible source of information.

Further, there was no pertinent information presented to the judge issuing the warrant other than as recounted earlier in this opinion. Taken in its totality, the information does not corroborate Craib's hearsay statement and thus does not provide a basis demonstrating the

---

[7] Cf. Snover v. State, 837 N.E.2d 1042, 1049 (Ind. Ct. App. 2005) (informant's statements not declarations against penal interest because informant "did not implicate himself in any additional crimes by revealing his alleged dealer"); Newby v. State, 701 N.E.2d 593, 599 (Ind. Ct. App. 1998) (informant's statements not declarations against penal interest because, among other things, issuing magistrate could not have reasonably concluded that by the allegations in the affidavit the informant "had implicated himself in criminal activity").

[8] The State argued, and the Court of Appeals agreed, that "were Craib to have given false information in an effort to deflect attention from his own criminal acts, he could have been prosecuted for false informing." Spillers, 816 N.E.2d at 71; see also Br. of Appellant at 11. The offense of false informing is a Class B misdemeanor that may be elevated to a Class A misdemeanor. See I.C. § 35-44-2-2. Considering that Craib was arrested for either a Class A or a Class C felony, his potential criminal liability for an additional misdemeanor offense was de minimus. This potential liability thus carries no weight in establishing Craib's credibility as an informant.

existence of probable cause for the issuance of the search warrant. Because the testimony before the issuing judge did not demonstrate the credibility of the informant and did not reveal other information corroborating the informant's hearsay statements, even affording significant deference to the issuing judge's determination, we conclude that probable cause did not exist to support issuing a warrant to search Spillers' residence.

## B. *Good Faith Exception*

The lack of probable cause does not automatically require the suppression of evidence obtained during a search. The Supreme Court of the United States held in United States v. Leon, 468 U.S. 897 (1984), that the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. Leon cautioned however that the good faith exception is not available in some situations, including where (1) the magistrate is "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," or (2) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923 (citation omitted). The good faith exception to the warrant requirement has been codified by Indiana Code section 35-37-4-5.

Here, there is no allegation that the first exception applies. Nothing in the record suggests that Detective Brooks misled the issuing judge when testifying at the hearing to obtain the warrant. Concerning the second reason the good faith exception may be unavailable, our Court of Appeals has explained:

> The exclusionary rule is designed to deter police misconduct, and in many cases there is no police illegality to deter. Although the magistrate or judge is responsible for determining whether an officer's allegations establish probable cause, an officer's reliance on the magistrate's probable-cause determination must be objectively reasonable. The Leon Court emphasized that the objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits. In some circumstances an officer will have no reasonable grounds for believing that the warrant was properly issued. Depending on the circumstances of the particular case, a warrant may be so facially

10

> deficient that the executing officers cannot reasonably presume it to be valid.

Hensley v. State, 778 N.E.2d 484, 489 (Ind. Ct. App. 2002), trans. not sought (quotation marks and citations omitted). Although we have ultimately concluded that the warrant on which the police relied to search Spillers' home was not supported by probable cause, we cannot say that the executing officers' reliance on the issuing judge's determination of probable cause was entirely unreasonable. Indeed our conclusion that Craib's statements were not declarations made against his penal interest was reached only after examining more carefully existing case law on the subject. It is true that officers are required "to have a reasonable knowledge of what the law prohibits." Id. But that does not mean that officers are required to engage in extensive legal research and analysis before obtaining search warrants. We conclude that the officers in this case relied on the search warrant in objective good faith. Accordingly, we reverse the trial court's grant of Spillers' motion to suppress the evidence found in his home.

## Conclusion

The judgment of the trial court is reversed.

Shepard, C.J., and Sullivan, J., concur.
Boehm, J., concurs in result with separate opinion in which Dickson, J., concurs.

**Boehm, Justice, concurring in result.**

In my view, Craib's statements that Spillers was his supplier had sufficient indicia of reliability to satisfy the probable cause requirement for issuance of a warrant. I therefore agree that the trial court's order granting Spillers' motion to suppress evidence should be reversed, but disagree that resort to the Leon good faith rule is necessary to achieve that result.

The issue is not whether Craib's statements to the police were admissible at the warrant hearing under the "against penal interest" exception to the hearsay rule. The ultimate question in determining the trustworthiness of hearsay for the purpose of proving probable cause to issue a warrant is whether the surrounding circumstances, in their totality, show that the informant's information is reliable. See Illinois v. Gates, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."); Aguilar v. Texas, 378 U.S. 108, 114 (1964) (the magistrate must be informed "of some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'") (internal citations omitted).

The majority concludes that Craib's statements were not against Craib's penal interest because Craib was caught "red handed" with cocaine in his possession before naming his purported supplier. The argument is that there is little risk in admitting what the police already know, so there is no basis to accept Craib's claims of the involvement of others. A second consideration is that a person in Craib's position is likely to try to curry favor with law enforcement and is therefore inherently unreliable. First, the fact that Craib had drugs in his possession plainly suggests he received them from someone, and corroborates the "received" if not the "from Spillers" in his account. His claim was thus not wholly uncorroborated. Second, the State correctly points out that if Craib had given false information to deflect attention from his own criminal acts, he could have been prosecuted for false informing. Indiana Code section 35-44-2-2 (2004) makes the offense of false informing a Class B misdemeanor that may be elevated to a Class A misdemeanor. The majority notes that Craib was arrested for either a Class A felony (dealing) or a Class C felony (possession), and his potential additional liability for a

misdemeanor offense (false informing) is relatively small. But even if the risk of false informing charges is viewed as a minimal additional exposure, I do not agree that Craib's statements exposed him to nothing more than what the police already knew. This is not a case where the only additional exposure was for false informing. After Craib was caught with drugs in his possession, he admitted not only that he had obtained the drugs from Spillers, but also that he had purchased drugs from Spillers over ten times since 2002, including a purchase the previous day. The majority concedes that Craib admitted to additional crimes of possession of cocaine, but concludes that this "was less a statement against his penal interest than an obvious attempt to curry favor with the police." I agree that Craib, apparently caught "red handed," had a strong incentive to shift blame or downplay his own role in comparison with that of others. But an informant caught "red handed" as to one offense, does not need to admit to ten other violations in order to steer the police to his dealer. See, e.g., United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) (Where police caught an informant with drugs in his possession and he disclosed his supplier and the fact that he had purchased drugs from the supplier on "numerous occasions" over the previous year, the informant's statements could not be taken merely as blame-shifting because they admitted to criminal activities beyond those of which the police already knew him to be guilty).

I think the reliability of statements by persons caught "red handed" does not stem solely from the fact that one does not "lightly admit a crime and place critical evidence in the hands of the police." United States v. Harris, 403 U.S. 573, 583 (1971). That is a factor, as the Supreme Court of the United States held in Harris. But reliability also stems from the fact that a person who knows that law enforcement officers are already in a position to charge a serious crime will not lightly undertake to mislead them. See 2 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 3.3(c), p. 129 (3d ed. 1996). The risks of prosecution for the inaccurate statements and perhaps more significantly, the risk of harsher treatment by the prosecution in the form of multiple counts and harder plea bargaining afford the requisite indicia of reliability. I think this meets the practical "common sense" test of, as Gates put it, producing a "fair probability" that the information has at least a core of truth. I am not alone in this view.[9]

---

[9] See, e.g., United States v. Davis, 617 F.2d 677, 693 (D.C. Cir. 1979); People v. James, 514 N.E.2d 998, 1002 (Ill. 1987) (stressing informant "had nothing to gain by providing false information for, once the falsehood was discovered, he would have to suffer the consequences of misleading the police."); State v. Hills, 829 So. 2d 1027, 1030-31 (La. 2002) (informant had "absolutely no incentive to lie about the

2

In short, I think a "practical common sense" evaluation of the officers' account of Craib's statements leads to the conclusion that a warrant properly issued.

Dickson, J., concurs.

---

source of his cocaine," as he "had just been arrested for possession of 19 bags of cocaine, knew that he faced serious felony charges" and "could reasonably assume that the police would react to his information . . . by attempting to verify or discount it"); State v. Mosley, 412 So. 2d 527, 531 (La. 1982) (sufficient admission against interest notwithstanding the fact informant was caught red handed in light of other factors, including that tip had considerable specificity and "that any discrepancies in his story might go hard with him"); Commonwealth v. Alvarez, 661 N.E.2d 1293, 1299 (Mass. 1996) (the informant, already in custody for sale of drugs, explained their source and thus knew the statements in that regard could lead to his prosecution on drug charges); State v. Read, 416 A.2d 684, 689 (R.I. 1980) (though defendant had already been found in possession of marijuana when he gave information regarding purchase of the drugs, "one in the position of an arrestee would not be likely to exacerbate his circumstances by telling the arresting officers an untruthful account of his source of supply."); State v. Wielgus, 278 N.W.2d 805, 808 (S.D. 1979) (defendant's argument informant "had a motive to falsify information to the police in order to ingratiate himself with the officers . . . cuts two ways," as assuming informant "had reason to please the officers, to supply them with false or misleading information would surely not accomplish that goal."); State v. Ward, 604 N.W.2d 517, 524-25 (Wis. 2000) (where an informant, an arrested drug dealer, identified the defendant as his supplier and the defendant claimed the informant was "inherently unreliable" because he was "attempting to bargain his way out of jail," the court concluded that the informant "was making an inculpatory statement under circumstances where, if his statements were found to be untruthful, [the informant] would be in deeper trouble.").