## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 19 2017, 10:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Aaron Smith, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 19, 2017 <br><br> Court of Appeals Case No. 49A02-1611-CR-2465 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marc T. Rothenberg <br><br> Trial Court Cause No. 49G02-1409-MR-42716 |

**Bailey, Judge.**

# Case Summary

[1] Aaron Smith ("Smith") appeals his conviction of Felony Murder.[1]  We affirm.

# Issues

[2] Smith presents two issues for review:

> I.  Whether the trial court erroneously admitted evidence obtained pursuant to a search warrant unsupported by probable cause; and

> II.  Whether the trial court erred by admitting into evidence two text messages as statements of an unknown co-conspirator.

# Facts and Procedural History

[3] At 7:56 p.m. on June 6, 2014, Indianapolis Metropolitan Police Officers were dispatched to Meadows Parkway and Adams Street in response to a 9-1-1 call. The officers found Louis Myers, Jr. ("Myers") seated in his vehicle.  Myers had died from multiple gunshot wounds.  The officers observed a trail of blood leading from the passenger side door into a grassy area.

[4] At 7:58 p.m., Smith arrived at Methodist Hospital in Indianapolis.  He had sustained a gunshot wound to his left forearm.  Police officers attempted to

---

[1] Ind. Code § 35-42-1-1.

investigate the circumstances surrounding the gunshot injury. Smith identified himself as Kevin Bradley. He claimed that he had been walking in an alley near Michigan and Parker streets when a vehicle approached and the driver displayed a weapon. Smith reported that he had been shot when he grabbed the weapon.

[5] Police officers were unable to confirm that the injured person was Kevin Bradley, and they asked Smith additional questions. However, Smith was unable or unwilling to provide his correct name, date of birth, or current address. He refused to identify his mother but claimed that he had a sister whose name he could not remember. Eventually, officers identified Smith by his fingerprints.

[6] Additional police officers were dispatched to the purported crime scene at Michigan and Parker streets. There, the officers found no evidence of a shooting. Also, there had been no recent report of shots fired in the area. Police officers obtained a search warrant and seized Smith's clothing, blood-stained money, and his cell phone. Subsequent DNA testing led the examiner to conclude that the blood stains on the currency were a mixture of blood from Smith and Myers. Smith's blood was found in Myers' vehicle.

[7] Smith was charged with Murder, Felony Murder, and Unlawful Possession of a Handgun by a Serious Violent Felon.[2] On September 13, 2016, a jury acquitted

---

[2] I.C. § 35-47-4-5.

Smith of Murder and convicted him of Felony Murder. The handgun possession charge was dismissed. Smith was sentenced to sixty years imprisonment. He now appeals.

## Discussion and Decision

## Search Warrant

[8] Smith argues that the trial court erroneously admitted evidence seized during his hospitalization because it was obtained pursuant to a search warrant unsupported by probable cause. Particularly, Smith claims that the State failed to identify a nexus between Smith's admission to the hospital with a gunshot wound and Myers' shooting.

[9] Both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution require probable cause to support the issuance of a search warrant. *Bradley v. State*, 4 N.E.3d 831, 840 (Ind. Ct. App. 2014), *trans. denied*. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The text of Article 1, Section 11 of the Indiana Constitution contains nearly identical language. *State v. Spillers*, 847 N.E.2d 949, 953 (Ind. 2006). These constitutional principles are codified in Indiana Code section 35-33-5-2, which details the information to be contained in an affidavit for a search warrant.[3] *Id.*

[10] "Probable cause is a fluid concept incapable of precise definition and must be decided based on the facts of each case." *Bradley*, 4 N.E.3d at 840. "The level of proof necessary to establish probable cause is less than that necessary to establish guilt beyond a reasonable doubt." *Jellison v. State*, 656 N.E.2d 532, 534 (Ind. Ct. App. 1995). Probable cause requires only a fair probability of criminal activity, not a prima facie showing. *Id.*

[11] "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* at 238-39.

---

[3] Pursuant to Indiana Code Section 35-33-5-2, the affidavit is to particularly describe the house or place to be searched and the things to be searched for; or the person to be arrested. The affiant is required to allege substantially the offense in relation thereto and that the affiant believes and has good cause to believe that the things sought are concealed there or the person to be arrested committed the offense. The affidavit is to set forth the facts known to the affiant through personal knowledge or based on hearsay. When based upon hearsay, the affidavit must establish the credibility of the source or contain information establishing corroboration.

[12] A substantial basis requires the reviewing court, while giving significant deference to the magistrate's determination, to focus upon whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Spillers*, 847 N.E.2d at 953. This includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* Our review is de novo, while affording the requisite deference. *Id.*

[13] Here, the warrant was issued upon the affidavit of Detective Erika Jones, who averred:

> On Friday June 6th, 2014 at approximately 7:56 pm, Officers of the Indianapolis Metropolitan Police Department were dispatched to 4004 Meadows Dr. on the report of a person shot.
>
> Upon arrival Officers observed a deceased black male sitting in the passenger [sic] seat of a purple Honda Accord, suffering from apparent gunshot wounds. Medics were on scene and pronounced the male deceased at 7:59 pm.
>
> I observed a trail of blood leading from the passenger side of the vehicle to an open field to the west. I attempted to follow the trail of blood; however it was lost in high grass in the field.
>
> At 7:58 pm, Officers were dispatched to Methodist Hospital, 1701 Senate Blvd, on the report of a delayed person shot. Upon arrival, Det. Jean Burkert spoke with the victim, who identified himself as Kevin Bradley. Det. Burkert was unable to confirm the name of Kevin Bradley and the information he provided. The subject advised Det. Burkert that he was shot at E. Michigan St/N. Parker Ave., however Officers did not locate a crime scene and there were no shots fired runs in the area. The subject

refused to provide any further information to Det. Burkert to confirm his identity.

> I am requesting a search warrant to recover the clothing that the unidentified male was wearing when he arrived at Methodist Hospital and his cell phone. His clothing is described as blue jeans, blue t-shirt, black socks and gray/black/green tennis shoes. His cell phone is a black Samsung flip phone.

(Ex. Vol. II, pg. 193.)

[14] At the motion to suppress hearing, Smith argued that there was no nexus between the shooting of Myers and the shooting of Smith. The State pointed to the timing of the events and Smith's efforts to conceal his identity. The trial court denied the motion to suppress, reasoning that the facts indicated either that Smith had been a shooting victim, which would necessitate gathering of evidence, or Smith had been criminally involved in Myers' shooting, which would likewise necessitate the gathering of evidence.

[15] In conducting our de novo review of the affidavit upon which the warrant was issued, we observe that mere minutes elapsed between the police dispatch to the murder scene and Smith's arrival at the hospital with a gunshot wound. Detective Jones averred that she had personally observed the murder scene and there was a trail of blood leading away from the vehicle. Thus, there was a strong indication that another individual had been wounded during the events under investigation. At the hospital, the wounded man provided false information as to his identity but claimed that he had been a shooting victim. Given all the circumstances set forth in the affidavit, there was "a fair

probability that contraband or evidence of a crime [would] be found" in Smith's personal effects. *Gates*, 462 U.S. at 238. This is true whether Smith was a perpetrator or a victim. The warrant was supported by probable cause.

## Text Messages

[16] A forensic search of Smith's cell phone history, conducted pursuant to a second warrant, revealed two text messages sent to Smith from an individual identified only as "Lil Black." (Tr. at 170.) The messages, sent shortly before Myers was killed, state:

> Bitch, I just called da lick.

> Bitch, u just had me call this lick for no reason.

(Tr. 173-74.) Smith objected to the messages as inadmissible hearsay; the State argued that the messages were admissible as statements of a co-conspirator. The trial court agreed with the State that the texts were not hearsay and admitted the texts into evidence. Smith contends that the trial court committed reversible error.

[17] Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). A co-conspirator's statement is not hearsay, if the statement "was made by the party's co-conspirator during and in furtherance of the conspiracy." Evid. Rule 801(d)(2)(E). "The statement does not by itself establish … the existence of the conspiracy[.]" *Id.*

[18] Before a statement is admissible as non-hearsay under Rule 801, "we also require that the State prove that there is 'independent evidence' of the conspiracy." *Lander v. State*, 762 N.E.2d 1208, 1213 (Ind. 2002) (quoting *Lott v. State*, 690 N.E.2d 204, 209 (Ind. 1997)). Accordingly, the State must show (1) the existence of a conspiracy between the declarant and the party against whom the statement is offered and (2) the statement was made in the course and in furtherance of this conspiracy. *Id.*

[19] Before using the text messages from "Lil Black," the State was required to establish that a conspiracy existed between him and Smith. Arguing for admissibility, the State directed the trial court to evidence that there were 32 phone calls and texts exchanged between "Lil Black" and Smith on June 6, 2014. Also, the State urged that the "timing was significant." (Tr. at 170.) Records disclosed that "Lil Black" placed the last telephone call that Myers appears to have answered and that Smith called "Lil Black" three minutes later.

[20] The State now argues that "the timing and sequence of the calls suggests that [Smith] and "Lil Black" were consulting with each other and working in concert to arrange something in connection to Myers." Appellee's Brief at 22. Although we agree that illegality may be "suggested," we cannot conclude that a plethora of calls, without background information as to the participants' relationship or any content of the communications, shows the "existence of a conspiracy" between the declarant "Lil Black" and Smith. *See Lander*, 762 N.E.2d at 1213. Nor does this call history, isolated from the texts, establish that a statement was made in the course and furtherance of a conspiracy. As such, the State failed to

meet the requirements of Rule 801(d)(2)(E). The texts were not properly admitted as non-hearsay statements of a co-conspirator.

[21] However, a conviction will not be overturned if an erroneous ruling is harmless error. Ind. Trial Rule 61. Harmless error has been defined as an error that does not affect the substantial rights of a party. *Lander*, 762 N.E.2d at 1213. Here, the State presented evidence to the jury including: officers dispatched upon a report of shots fired discovered Myers' body and a trail of blood leading away from the vehicle; Myers had no currency on his person although he had been engaged in selling movies; almost simultaneously with this discovery, Smith sought treatment for a gunshot wound at a nearby hospital; Smith was evasive and attempted to hide his true identity; Smith was in possession of blood-stained cash; DNA testing revealed that Smith's blood was in Myers' vehicle; and DNA testing revealed that a combination of Smith's blood and Myers' blood was on $20 bills and $10 bills obtained from Smith at the hospital. Considering the overwhelming evidence of Smith's guilt, we cannot say that the jury's consideration of the text messages violated Smith's substantial rights.

# Conclusion

[22] The warrant executed during Smith's hospitalization was supported by probable cause. The admission of two text messages from an alleged co-conspirator to Smith was harmless error.

[23]    Affirmed.

Vaidik, C.J., and Robb, J., concur.