

**FILED**

Aug 31 2020, 10:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jay T. Hirschauer
Logansport, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Michael Stone,

*Appellee-Defendant*

August 31, 2020

Court of Appeals Case No.
20A-CR-421

Appeal from the Cass Superior
Court

The Honorable Lisa Swaim, Judge

The Honorable Leo T. Burns,
Senior Judge

Trial Court Cause No.
09D02-1907-F4-6

**Altice, Judge.**

## Case Summary

[1]     The State appeals from the trial court's grant of Michael Stone's motion to
suppress evidence found following the execution of a search warrant at his

residence. The trial court determined that the warrant was not supported by probable cause and that the officers executing the warrant did not rely on the warrant in good faith.

[2] We reverse and remand.

### Facts & Procedural History

[3] In May 2019, Detective Joseph Nies with the Cass County Sheriff's Department was investigating the theft of firearms from two local residences. The first involved a Sig Sauer 9-milimeter handgun owned by Cory Zeider and taken from a closet in his residence on or about March 7, 2019. Zeider reported no sign of forced entry and named two possible suspects – Brad Bell and Cody Putnam – who were friends of Zeider and knew where he kept a spare key.

[4] The other stolen firearm was reported by Thomas Prater on May 1, 2019. Prater reported that his Ruger P-94 had been stolen from his house, and he named Putnam as a possible suspect. Putnam had previously lived with him and knew about Prater's guns.

[5] Detective Nies entered the serial numbers for the stolen firearms into a national database. He received a hit on the Ruger, which had been recovered during a traffic stop in Michigan on May 2, 2019. Maverick Waltz was in possession of the Ruger at the time of the stop. Detective Nies traveled to Michigan on May 17, 2019, and he interviewed Waltz in jail. Waltz informed Detective Nies that he had received the Ruger from Putnam in exchange for debt forgiveness.

Because the firearm was worth more than the debt, Waltz reported that he also gave Putnam some cash in the exchange.

[6] After locating Putnam, Detective Nies interviewed him on May 23, 2019. Putnam confessed to burglarizing both residences and taking the firearms. He indicated that he used a card to enter Zieder's residence and a spare key hidden outside to enter Prater's residence. Regarding Waltz's possession of the Ruger, Putnam indicated that he owed Waltz a debt, so he traded the Ruger for the debt and an additional sum of money. Additionally, Putnam reported that he had sold the Sig Sauer to Stone for $400 about three weeks ago because Stone liked the gun and wanted to keep it for himself. Putnam then identified Stone in a photo array. Though Detective Nies did not know him, Stone was known to the Cass County Drug Task Force and he had prior convictions for dealing methamphetamine and for a felony handgun charge. With information from other officers, Detective Nies determined Stone's address, which was a single-family home in Logansport.

[7] That same day, Detective Nies applied for a search warrant and testified at a probable cause hearing to the facts set out above. After hearing the evidence, the trial court authorized a search of Stone's residence for a Sig Sauer P-320 9-milimeter handgun. The search, which was conducted in the early morning hours of May 24, 2019, resulted in the discovery of multiple firearms, though not the Sig Sauer, as well as drugs and $6000 in cash. Stone was arrested at the scene for possession of methamphetamine.

[8] On July 23, 2019, the State charged Stone with Level 4 felony unlawful possession of a firearm by a serious violent felon and Level 5 felony possession of methamphetamine. In subsequent amendments, the State added charges of Level 5 felony possession of a narcotic drug (hydrocodone) and Class A misdemeanor theft.

[9] Stone filed a motion to suppress all evidence seized as a result of the search warrant, and the trial court held a suppression hearing on October 15, 2019. The trial court granted the motion to suppress on December 20, 2019, expressly determining that "[t]he analysis of the facts in this case is controlled by the Indiana Supreme court's holding in *State v. Spillers*, 847 N.E.2d 949 (Ind. 2006)." *Appellant's Appendix* at 81. The State now appeals, arguing that the warrant was supported by probable cause and, thus, that the trial court erred in suppressing the evidence found during execution of the search warrant.

## Discussion & Decision

[10] Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require probable cause for the issuance of a search warrant, which we have explained is a fluid concept incapable of precise definition and must be decided based on the facts of each case. *State v. Shipman*, 987 N.E.2d 1122, 1126 (Ind. Ct. App. 2013). In deciding whether to issue a search warrant, a judge's task is "simply to make a practical, commonsense decision whether, given all the circumstances set forth in the

affidavit, there is a fair probability that evidence of a crime will be found in a particular place." *Id.*; *see also Spillers*, 847 N.E.2d at 952-53.

[11] On review, we consider whether the issuing judge had a substantial basis for concluding that probable cause existed. *Spillers*, 847 N.E.2d at 953. A substantial basis requires the reviewing court, with significant deference to the issuing judge's determination, to "focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause." *Id*. While we give substantial deference to the issuing judge's determination, our review of the trial court's substantial basis determination following a motion to suppress is reviewed by this court de novo. *Id*. "In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases are to be resolved in favor of upholding the warrant." *Smith v. State*, 982 N.E.2d 393, 405 (Ind. Ct. App. 2013) (quoting *Mehring v. State*, 884 N.E.2d 371, 377 (Ind. Ct. App. 2008), *trans. denied*), *trans. denied*.

[12] Where a warrant is sought based on hearsay information, the probable cause affidavit (or testimony, as in this case) must either: (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or (2) contain information that establishes that the totality of the circumstances corroborates the hearsay. *Spillers*, 847 N.E.2d at 953-54 (citing Ind. Code § 35-33-5-2(b) and I.C. § 31-35-5-8(a)(1)). The trustworthiness of hearsay in this context can be established in a number of

ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted. *Id*. at 954. This list is not exclusive and, depending on the facts, other considerations may come into play. *Id*. Relevant here, an informant's declaration against penal interest can furnish sufficient basis for establishing the informant's credibility. *See id*.; *Shipman*, 987 N.E.2d at 1127.

[13] In *Spillers*, our Supreme Court considered whether the informant's statement qualified as one against penal interest. Craib, the informant, had been caught by police with more than three grams of cocaine, which was found during the execution of a search warrant at his home. *Spillers*, 847 N.E.2d at 956. After his arrest, Craib informed the detectives that Spillers was his drug source and that he had obtained cocaine from Spillers more than ten times over the last few months, most recently that same day. Craib also provided Spiller's address and the make and model of his car, which were facts readily available to the general public.

[14] The Court observed that statements by informants have qualified as against penal interest and been found sufficient to establish probable cause for issuance of a search warrant in cases where:

> the informant either volunteered inculpatory information after being arrested for a minor offense or for an offense only indirectly related to the information given to police, or the

informant was not under arrest at all and voluntarily gave police inculpatory information that the police would not otherwise have necessarily known or suspected.

*Id*. at 955. After noting several such cases, the Court summarized, "[t]he underlying thread binding these cases together is that an informant, after arrest or confrontation by police, admitted committing criminal offenses under circumstances in which the crimes otherwise would likely have gone undetected." *Id*. at 956. Indeed, the Court recognized, people do not lightly admit a crime and place critical evidence in the hands of the police by their own admissions and, thus, such admissions carry an indicia of credibility sufficient to support a finding of probable cause to search. *Id*.

The Court found such indicia of credibility lacking in *Spillers* because Craib had been "caught 'red handed' with drugs in his possession before naming his purported supplier." *Id*. at 956. Though he admitted committing additional crimes of possession of cocaine, the Court noted that "his tip was less a statement against his penal interest than an obvious attempt to curry favor with the police." *Id*. (citing *Williamson v. United States*, 512 U.S. 594, 607-08 (1994) ("A person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation.")). Because the decision to reveal his source did not subject him to any additional criminal liability, the Court concluded that "under the circumstances Craib's declarations were not against his penal interest and

therefore did not demonstrate that Craib was a credible source of information." *Id*. at 956-57.

[16] Similarly, in the case at hand, the trial court found that Putnam's statements were not declarations against penal interest. We cannot agree, as the facts of this case are clearly distinguishable. Here, Putnam was not under arrest when he spoke with Detective Nies and the evidence against him was slim – far from being caught red handed. Two victims had listed Putnam as a possible suspect in the separate thefts of firearms because he was a friend who had access to each home. Further, the Ruger had been recovered shortly after it went missing in the possession of another individual – Waltz, who, while in jail, named Putnam as the source of the firearm. This was the only actual evidence linking Putnam to the theft of the Ruger, and no evidence linked him to the theft of the Sig Sauer, which had occurred about two months earlier.

[17] During the interview with Detective Nies, Putnam admitted to burglarizing both residences and stealing the firearms, and he provided incriminating details not known by police, including describing how he gained entrance to each residence. Putnam also indicated that he transferred the Ruger to Waltz in exchange for debt forgiveness and cash, which was the same account given by Waltz. With regard to the Sig Sauer, Putnam reported that he sold the stolen firearm to Stone in exchange for $400. Thus, Putnam not only informed police where the stolen Sig Sauer might be recovered, he also made himself subject to a new criminal charge, based on the criminal transfer of a firearm to a serious violent felon. *See* Ind. Code § 35-47-2.5-16(b)(1) ("A person who provides a

firearm to an individual who the person knows … is ineligible to purchase or otherwise receive or possess a firearm for any reason other than the person's age…commits criminal transfer of a firearm, a Level 5 felony.").

[18] Nothing about Putnam's admissions indicates that he was attempting to shift blame, downplay his role in the offenses, or curry favor with the police. Rather, we find his statements to be true declarations against his penal interest, subjecting him to criminal liability and demonstrating that he was a credible source of information. The trial court erred in granting the motion to suppress based on *Spillers*.

[19] Alternatively, Stone argues that even crediting Putnam's statement, there was insufficient probable cause for issuance of the warrant because the State failed to establish a sufficient nexus between the Sig Sauer and his residence. He asserts that there is "absolutely nothing in the record to support a belief that Stone possessed the handgun at his residence." *Appellee's Brief* at 13.

[20] To obtain a search warrant, the State must establish a fair probability that the thing sought – here the stolen Sig Sauer – will be found in the particular location being searched. *See Fry v. State*, 25 N.E.3d at 237, 245-46 (Ind. Ct. App. 2015), *trans. denied*. Here, Putnam indicated that Stone purchased the Sig Sauer from him three weeks earlier for $400 and that Stone liked the gun and wanted to keep it for himself. Under the circumstances, it was reasonable for Detective Nies to believe that the stolen gun would be found at Stone's home. *See Allen v. State*, 798 N.E.2d 490, 497-99 (Ind. Ct. App. 2003) (permitting

search for murder weapons at apartment of one suspect's cousin where suspects began spending time after the series of murders that began two months prior to the execution of the search warrant and noting that "handguns and rifles are the type of property that a person reasonably could be expected to keep for at least a period of a month and a half"); *Foster v. State*, 633 N.E.2d 337, 345 (Ind. Ct. App. 1994) (finding that a handgun, unlike controlled substances that can be expected to be consumed or distributed, was the "sort of property that the perpetrator reasonably could be expected to keep" and concluding that warrant for search of suspect's residence issued twenty-eight days after murder was not stale).

[21]   In sum, we find that a reasonably prudent person could make a practical, common-sense determination, given all the circumstances set forth in Detective Nies's testimony, that there was a fair probability the stolen Sig Sauer would be found at Stone's home.  Thus, the trial court erred in suppressing the evidence seized during the execution of the search warrant.

[22]  Reversed and remanded.

Bailey, J. and Crone, J., concur.