ATTORNEYS FOR APPELLANT
Robert W. Hammerle
Steven D. Allen
Joseph M. Cleary
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

### In the
## Indiana Supreme Court

**FILED**
Jun 27 2008, 1:02 pm

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 49S02-0701-CR-33

GEORGE MEMBRES III,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G20-0510-MC-185560
The Honorable Michael Jensen, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0511-CR-1065

**June 27, 2008**

**Boehm, Justice.**

We hold that <u>Litchfield v. State</u>, 824 N.E.2d 356 (Ind. 2005), does not apply retroactively because it established a new rule of state criminal procedure that does not affect the reliability of the fact-finding process. We also hold that the warrant in this case was supported by probable cause and was not overbroad.

**Facts and Procedural History**

In March of 2005, Deputy Scott Wildauer of the Marion County Sheriff's Department was involved in an ongoing investigation into possible drug trafficking at the residence of George Membres III. A confidential informant told Wildauer that he saw another drug dealer at Membres's house and that he was "pretty sure" Membres was dealing "large quantities" of marijuana from his residence. Although Wildauer had never used information from the informant to obtain a search warrant, Wildauer had used the informant at least forty to fifty times in the past and found his information "solid" and "reliable." Wildauer was uncertain as to the exact number of convictions that resulted from the informant's information, but he believed that it was more than three. Other surveillance officers reported seeing a vehicle that Wildauer associated with a suspected drug dealer at Membres's house.

Based on this information, on March 9, 2005, Wildauer seized the trash from the public area in front of Membres's residence on a routine trash collection day. A search of the trash revealed twenty-five burnt ends of marijuana cigarettes, marijuana, four plastic baggies with corners missing, two empty packages of rolling papers, and mail addressed to Membres. Based on the evidence recovered from Membres's trash, the State obtained a warrant to search Membres's home for "[m]arijuana, controlled substances, U.S. Currency, papers, records, documents, computers, or any other documentation which indicates or tends to indicate a violation or a conspiracy to violate the [Indiana Controlled] Substances Act, paraphernalia, scales, packing materials, and weapons." A search produced $57,060 in cash, marijuana, rolling papers, paraphernalia, firearms, four Rolex watches and other jewelry, cell phones, and a number of documents.

Several weeks later, the State successfully moved for an order under Indiana Code section 35-33-5-5(j) to authorize the transfer of the seized cash, jewelry, and firearms to federal authorities for forfeiture proceedings. Membres moved for a stay of the turnover order and to suppress the evidence, alleging that the search warrant was based on an illegal search of his trash and was overbroad. The trial court initially granted a stay of the turnover order and after a hearing denied the motion to suppress and ordered the property to be turned over to the federal government. A stay of the turnover order was granted to allow Membres to seek appellate review.

2

Membres appealed, arguing that the turnover was invalid because (1) the search and seizure of his trash was unlawful under Litchfield v. State, 824 N.E.2d 356 (Ind. 2005), which was handed down two weeks after the search and (2) the search warrant was overbroad.  The Court of Appeals agreed that Wildauer's search of the trash was unlawful under the standard announced in Litchfield.  Membres v. State, 851 N.E.2d 990, 993–94 (Ind. Ct. App. 2006).  The court did not discuss the merits of Membres's overbroad warrant claim.  Id. at 991.  We granted transfer. 869 N.E.2d 447 (Ind. 2007) (table).

## Jurisdiction and Standard of Review

Membres asserts, without elaboration, that appellate jurisdiction is conferred by Appellate Rule 5.  That rule authorizes appeals from final judgments under Rule 5(A) and appeals from interlocutory orders authorized by Appellate Rule 14 under Rule 5(B).  The trial court's order appears to be a final judgment as to the turnover order and an interlocutory appeal as to the motion to suppress.  To the extent this is an interlocutory appeal, we take the trial court's grant of a stay to permit appeal as certifying the order for interlocutory appeal and the Court of Appeals's opinion as accepting the appeal.

We review de novo a trial court's ruling on the constitutionality of a search or seizure. Myers v. State, 839 N.E.2d 1146, 1150 (Ind. 2005).  However, we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous.  Id. Thus, we do not reweigh the evidence, but consider conflicting evidence most favorable to the trial court's ruling.  State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006).

## I.  Turnover Order

Membres argues that the trial court erred in ordering his property to be turned over to federal authorities for forfeiture proceedings because the search and seizure of the property was unlawful.  The statute authorizing the turnover of seized property provides:

> Upon motion of the prosecuting attorney, the court shall order property seized under IC 34-24-1 transferred, subject to the perfected liens or other security interests of any person in the property, to the appropriate federal authority for disposition under 18 U.S.C. 981(e), 19 U.S.C. 1616a, or 21 U.S.C. 881(e) and any related regulations adopted by the United States Department of Justice.

Ind. Code § 35-33-5-5(j) (2004). The State argues that the language of the turnover statute is mandatory in that "the court shall" order the transfer of property to federal authorities. Membres responds that the statute by its terms applies only if the property has been "seized under Indiana code chapter 34-24-1." Indiana Code section 34-24-1-2(a) provides:

> Property may be seized under this chapter by a law enforcement officer only if:
> > (1) the seizure is incident to a lawful:
> > > (A) arrest;
> > > (B) search; or
> > > (C) administrative inspection[.]

We agree with the trial court and the Court of Appeals that if the search or seizure of Membres's property was unlawful, the turnover order must be reversed. The statute contemplates a lawful search, and the purpose of the exclusionary rule would be thwarted if law enforcement could conduct unlawful intrusions into citizens' privacy and still use the evidence by turning it over to another jurisdiction.

## II. Warrantless Searches of Trash

Searches and seizures under the Fourth Amendment to the Federal Constitution are evaluated under a two-prong reasonableness standard: (1) whether the individual has manifested a subjective expectation of privacy and (2) whether society is willing to recognize that expectation as reasonable. California v. Ciraolo, 476 U.S. 207, 211 (1986). In California v. Greenwood, a majority of the United States Supreme Court concluded that under the Fourth Amendment individuals do not have a reasonable expectation of privacy in garbage left for collection outside the curtilage of a home. 486 U.S. 35, 40–41 (1988). Under this standard, the seizure of Membres's trash did not violate the Fourth Amendment. Presumably for that reason, Membres relies on Indiana law.

Searches under Indiana law are governed by Article I, Section 11 of the Indiana Constitution. It reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

4

Although this language tracks the language of the Fourth Amendment of the Federal Constitution verbatim, significant differences have evolved between Indiana and federal constitutional law governing searches and seizures, including warrantless searches and seizures of trash. Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005).

At the time of Membres's search, the most recent decision of this Court on the subject of trash searches was Moran v. State, 644 N.E.2d 536 (Ind. 1994). In Moran, undercover investigators ran a hydroponic equipment supply store in order to identify individuals who might be cultivating marijuana. The Moran defendants were patrons of the store and had discussed their growing facilities with the investigators. Id. at 537–38. This resulted in a monitoring of the energy consumption at one of the defendant's homes, which revealed abnormally high electricity consumption. Id. at 538. Based on this information, officers seized the trash without a warrant and found marijuana. Id. In evaluating the legality of the warrantless trash search, Moran rejected the federal "reasonable expectation of privacy" test and determined that the legality of warrantless searches, including searches of trash, turns on the reasonableness of the police conduct under the totality of the circumstances. Id. at 539–40. A majority of this Court noted that the police did not trespass on the premises of the defendants, conducted themselves in the same manner as trash collectors when picking up the trash, and did not cause a disturbance. Id. at 541. This Court concluded that "[g]iven these . . . circumstances, and while realizing that Hoosiers are not entirely comfortable with the idea of police officers casually rummaging through trash left at curbside" the police activity was reasonable under the Indiana Constitution. Id. The search of Membres's trash met this standard.

Membres contends that the search of his trash was unlawful under Litchfield, decided two weeks after the search. In Litchfield, this Court was again presented with the issue of warrantless trash searches. We first explained that the reasonableness of any search or seizure turns on a balance of three factors: "(1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs." 824 N.E.2d at 361. We noted that "we [had] not elaborated on the methodology of evaluating reasonableness beyond the directive in Moran to consider the 'totality of the circumstances,'" and that the Court of Appeals had since "grappled" with several cases involving trash searches. Id. at 359–60, 362. In an

5

effort to establish more clear lines of permissible police conduct, we expressly stated two factors necessary to establish a reasonable warrantless trash search: (1) "trash must be retrieved in substantially the same manner as the trash collector would take it" and (2) the police must possess "articulable individualized suspicion" that the subject of the trash search was engaged in illegal activity. Id. at 363–64. We explained that articulable individualized suspicion is "essentially the same as is required for a 'Terry stop' of an automobile." Id. at 364.

Membres argues that Wildauer did not have reasonable suspicion to conduct the search, and it was therefore unlawful under Litchfield. The State first responds that Litchfield is not retroactive and therefore Wildauer did not need reasonable suspicion before searching Membres's trash because the prevailing case law at the time of the search imposed limitations only on the manner in which the trash was retrieved. The State alternatively argues that even if Litchfield is applicable to the search, Wildauer had reasonable suspicion because the informant he used was reliable. Finally, the State contends that even if Litchfield is retroactive and Wildauer did not have reasonable suspicion, Indiana law provides a good faith exception to the exclusionary rule in this case under Indiana Code section 35-37-4-5(b)(1)(B) because Wildauer obtained the evidence pursuant to "judicial precedent . . . that is later declared unconstitutional or otherwise invalidated."

All of these arguments proceed from the assumption that Moran stood for the proposition that warrantless trash searches are valid under the Indiana Constitution as long as the police conduct themselves in the same manner as trash collectors. Moran did impose this limitation, but as Litchfield noted, 824 N.E.2d at 361, Moran also held that reasonableness of warrantless trash searches is to be determined based on a totality of the circumstances. See Moran, 644 N.E.2d at 546. Litchfield expressly adopted the requirement of "articulable individualized suspicion" as an elaboration of Moran but did not overrule Moran. Indeed, in Moran itself there were grounds for reasonable suspicion based on the electricity consumption and the defendants' avowed interest in growing facilities. Litchfield expressly adopted a requirement that was not inconsistent with Moran but also was not foreshadowed by Moran. In that respect, Litchfield represents a new rule of criminal procedure:

> In general, . . . a case announces a new rule when it breaks new ground or
> imposes a new obligation on the . . . [g]overnment . . . [or] if the result was not

> *dictated* by precedent existing at the time the defendant's conviction became final, or if the result is "susceptible to debate among reasonable minds."

State v. Mohler, 694 N.E.2d 1129, 1132–33 (Ind. 1998) (alterations in original) (citation omitted). Under Moran it was debatable what constituted a reasonable trash search. Also, before Litchfield there was no express statement that an "articulable individualized suspicion" would be necessary in all warrantless trash searches. The interplay between Moran and Litchfield is similar to the evolution from Apprendi v. New Jersey, 530 U.S. 466 (2000), to Blakely v. Washington, 542 U.S. 296 (2004). Apprendi set forth the rule that to comply with the Sixth Amendment, juries, not judges, must find beyond a reasonable doubt "any fact that increases the penalty for a crime beyond the prescribed statutory maximum." 530 U.S. at 490. In Blakely, a majority of the Supreme Court held that the rule announced in Apprendi applied equally to sentencing. Blakely concluded that for purposes of Apprendi, the "statutory maximum" is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303 (emphasis omitted). Although Blakely did not alter the law set forth in Apprendi, it did result in an unforeshadowed application of Apprendi and reshaped courts' understanding of the term "statutory maximum." Smylie v. State, 823 N.E.2d 679, 687 (Ind. 2005). Similarly, Litchfield "reshaped" the understanding of what constitutes a reasonable warrantless trash search.

Membres argues that because his case was not yet final at the time Litchfield was decided, Litchfield's new rule of criminal procedure applies retroactively to Wildauer's search of his trash. The Court of Appeals did not discuss the retroactivity of Litchfield. Apparently assuming that retroactive application was proper, the court evaluated Membres's trash search claim under the Litchfield standard and found that Wildauer did not have reasonable suspicion for the warrantless trash search.

This case deals with a direct appeal, not a collateral attack. We are bound by the Supremacy Clause to apply new rules of federal criminal procedure retroactively to the extent required by federal law. Griffith v. Kentucky, 479 U.S. 314, 328 (1987), establishes the general rule for federal constitutional rules that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . ." This sets a minimum requirement for new federal rules, but states may be more generous in giving retroactive effect to new federal rules. See Danforth v. Minnesota, 128 S. Ct. 1029, 1033,

1045 (2008) (holding that the rule of retroactivity of collateral attacks under Teague v. Lane, 489 U.S. 288 (1989), does not "constrain[] the authority of state courts to give broader effect to new rules of criminal procedure than is required by that opinion" because "[f]ederal law simply 'sets certain minimum requirements that States must meet but may exceed in providing appropriate relief.'" (quoting Am. Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 178–79 (1990))). Thus, Smylie permitted any defendant who had raised a challenge to his sentence to raise on direct appeal a claim of violation of the federal right to a jury trial established in Blakely, even if the sentencing issue was not grounded in a claim of violation of the right to trial by jury. 823 N.E.2d at 687–91.

Federal law does not govern retroactivity of a new rule of criminal procedure that derives from the state constitution. Although Indiana has followed federal retroactivity doctrine for post-conviction claims, we have not recently addressed the retroactivity of new constitutional rules in direct appeals. An earlier Indiana case on direct appeal identified three relevant considerations in determining whether to apply new rules of state criminal procedure retroactively: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Enlow v. State, 261 Ind. 348, 350–51, 303 N.E.2d 658, 659 (1973). In Enlow, this Court differentiated between new criminal principles that "go[] to the fairness of the trial itself and [are] designed to eliminate a previously existing danger of convicting the innocent" and those that "enforce other constitutional rights not necessarily connected with the fact finding function." Id. at 351, 303 N.E.2d at 660. The former require retroactive effect, and the latter do not. Id. Enlow addressed the point of establishing habitual offender status by proving prior convictions in the course of the trial. This was found to affect the fairness of the proceeding.

We think the exclusionary rule that prohibits introduction into evidence of unlawfully seized materials is an example of a rule that does not go to the fairness of the trial. It is a rule that is, as Enlow put it, designed to "enforce other constitutional rights not necessarily connected with the fact finding function." Otherwise stated, we do not exclude the products of unlawful searches and seizures because they are unreliable or immaterial or unduly prejudicial evidence. See Stone v. Powell, 428 U.S. 465, 489–90 (1976) (explaining that evidence inadmissible under

8

the Fourth Amendment's exclusionary rule "is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant"). Indeed, exclusion of this evidence is an obstacle to the truth-finding objective of trials. We nonetheless exclude it because that is the only effective means of deterring improper intrusions into the privacy of all citizens.

Justice Rucker is correct that there is no authority squarely supporting our view, but there is also none opposing it. As both dissents point out, new rules of criminal procedure required by the federal constitution are applied retroactively on collateral attack only in the limited circumstances established in Teague v. Lane, 489 U.S. 288 (1989). And Daniels v. State, 561 N.E.2d 487 (1990), adopted the same approach to new rules of criminal procedure under the Indiana Constitution.

Neither the Supreme Court of the United States nor this Court has ever considered whether these general principles of retroactivity apply to the rule requiring exclusion of evidence that is the product of an unconstitutional search or seizure. In Teague, Daniels, and every case cited by Justices Rucker and Sullivan, the "new rule" in question was one designed to assure a fair trial by prohibiting the introduction of evidence that was deemed unreliable or otherwise to assure a fair trial. The exclusionary rule for searches and seizures is qualitatively different from all of these rules. For example, Withrow v. Williams explained that although Miranda's rule is in part based on prophylactic considerations, it also "serves to guard against 'the use of unreliable statements at trial.'" 507 U.S. 680, 691–92 (1993) (quoting Johnson v. New Jersey, 384 U.S. 719, 730 (1966)). In this respect it is unlike the Fourth Amendment exclusionary rule, which merely "serves to deter future constitutional violations" and does not improve the reliability of trial evidence. Id. For that reason federal habeas corpus is generally not available to overturn convictions based on unlawfully seized evidence, but is available for Miranda violations. Id. at 682–83. In sum, we do not exclude evidence that is unlawfully seized because it is irrelevant or unduly prejudicial. To the contrary, that evidence ordinarily furthers the quest for accurate resolution of the facts of the case. We nevertheless exclude it because we consider it necessary to protect the privacy of all citizens from excessive intrusion by law enforcement. In other words, we accept the obstacle to the truth-seeking function in order to preserve a higher value.

9

There appear to be few "new rules" in the search and seizure area under other states' constitutions. We do find one authority, State v. Skidmore, 601 A.2d 729 (N.J. Super. Ct. App. Div. 1992), that considered the specific issue of retroactive application of a new state constitutional rule on warrantless trash searches. In Skidmore, defendants urged the court to retroactively apply a recent holding from the New Jersey Supreme Court that warrantless trash searches without probable cause violated the state constitution. Id. at 731. The court used a three-part test similar to that enunciated in Enlow for its retroactivity analysis. See id. at 734. In evaluating the first criterion—the purpose to be served by retroactive application—the New Jersey court stated "[w]here a new rule is an exclusionary rule, meant solely to deter illegal police conduct, the new rule is virtually never given retroactive effect. The reason is that the deterrent purpose of such a rule would not be advanced by applying it to past misconduct." Id. Evaluating this in light of the other criteria, the court concluded that the new rule of state criminal procedure on warrantless searches of trash should not be applied retroactively, even to cases pending on direct review or not yet final. Id. at 735. Justice Rucker is correct that New Jersey has not fully adopted Teague. But New Jersey's retroactivity rules are more permissive, not more restrictive, than Teague. See id. at 734. New Jersey nevertheless reached the same result we do as to unlawful searches and seizures.

In sum, we agree with the Skidmore court. Indiana search and seizure jurisprudence, like federal Fourth Amendment doctrine, identifies deterrence as the primary objective of the exclusionary rule. See State v. Spillers, 847 N.E.2d 949, 957 (Ind. 2006) ("The exclusionary rule is designed to deter police misconduct . . . ." (quoting Hensley v. State, 778 N.E.2d 484, 489 (Ind. Ct. App. 2002))). The rule announced in Litchfield is designed to deter random intrusions into the privacy of all citizens. Retroactive application of that rule would not advance its purpose for the obvious reason that deterrence can operate only prospectively. Exclusion of the fruit of a random search, although important in protecting Indiana citizens from unreasonable searches and seizures, does not in any way serve to avoid an unjust conviction. To the contrary, exclusion of relevant and otherwise admissible evidence can prevent conviction where reliable evidence supports it. Because there is this cost to enforcing the exclusionary rule, it should be done only where appropriate to advance its purpose.

Indiana adopted the exclusionary rule long before Mapp v. Ohio applied the Fourth Amendment exclusionary rule to state criminal proceedings. In Callender v. State, 193 Ind. 91,

96–97, 138 N.E. 817, 818–19 (1923), we cited the Indiana Bill of Rights as authority for excluding evidence that had been seized without compliance with the existing statutes on search warrants for intoxicating liquors. Indeed, the seizure had occurred under circumstances which led the Court to wonder whether a warrant had been obtained. Such a seizure is quite different from one conducted in accordance with the law prevailing at the time but argued later to have been improper in light of intervening decisions. We agree with Justice Sullivan that the integrity of the judicial process is a factor in the decision to recognize a constitutional right. But if a search was conducted in compliance with the law as announced by this Court at the time of the search, we see no affront to the dignity of the court in admitting the fruits of that search.

Finally, we permit retroactivity to a successful litigant, and in that sense applied Litchfield retroactively in Litchfield itself. Relief, and the incentive to present a novel claim, should not turn on the relative speed with which a specific case reaches appellate resolution. Accordingly, Litchfield applies in Litchfield itself, and also any other cases in which substantially the same claim was raised before Litchfield was decided. But challenges to pre-Litchfield searches that did not raise Litchfield-like claims in the trial court before Litchfield was decided are governed by pre-Litchfield doctrine even if the cases were 'not yet final' at the time Litchfield was decided.

Justice Sullivan is correct that there is some arbitrariness in granting relief under our holding today to some defendants and not to others. But any rule of retroactivity is arbitrary unless it gives full retroactive effect to everyone. Indeed, courts are not required to apply new federal constitutional rules retroactively unless the issue has been preserved and the case is "pending on direct review or not yet final." See Griffith, 479 U.S. at 328; United States v. Booker, 543 U.S. 220, 268 (2005) (holding that reviewing courts must still "apply ordinary prudential doctrines, determining, for example, whether the issue was raised below," before applying a rule retroactively). So, under Griffith, even if they barely miss the magic date, those unfortunate enough to have appealed and lost or failed to appeal or failed to preserve the issue all get no benefit of a new rule, even one deemed necessary for a fair trial. For prophylactic rules, specifically the exclusionary rule, there is good reason to give relief to those who raised the issue in the trial court because it prevents a race to appellate judgment that could frustrate the orderly resolution of individual cases. But because the evidence in search and seizure cases is

11

usually inherently probative and reliable, we see no reason to exclude it categorically if the issue has not been raised before the new ruling, and the officers seizing the evidence operated under the rules this Court had announced at the time.

The law as articulated in <u>Moran</u> at the time of the search looked to the totality of the circumstances to evaluate the reasonableness of a search and seizure. As already noted, Wildauer's warrantless trash search was reasonable under that standard. Although it is unnecessary to address whether Wildauer's search was valid under <u>Litchfield</u>'s requirement of reasonable suspicion, we observe that Wildauer testified that the informant had provided reliable information over forty times and at least three convictions resulted from the information. The informant also identified the specific drug—marijuana—to be found at Membres's residence. Another officer observed a car associated with another suspected drug dealer at Membres's residence, and Wildauer conducted the seizure as a trash collector would.

### III. Overbroad Warrant Claim

Because the Court of Appeals held that the warrantless trash search was improper, it did not address Membres's overbroad warrant claim. Membres argues that (1) there were no facts establishing probable cause to issue the warrant to search his residence and that (2) the catchall language in the warrant violates the prohibition on general warrants.[1] The search warrant in this case authorized officers to search Membres's residence for "[m]arijuana, controlled substances, U.S. Currency, papers, records, documents, computers, or any other documentation which indicates or tends to indicate a violation or a conspiracy to violate the [Indiana Controlled] Substances Act, paraphernalia, scales, packing materials, and weapons." A detailed affidavit establishing probable cause was attached and incorporated by reference in the warrant. The affidavit identified items expected to be used by a dealer, including large amounts of cash, jewelry, paraphernalia, firearms, cell phones, and documents of transactions.

---

[1] Although Membres refers to Article I, Section 11 of the Indiana Constitution in his brief, he fails to present a state constitutional analysis of his overbreadth claim separate from that of the Federal Constitution. Consequently, he has waived his claim based upon the Indiana Constitution, and we consider only the federal claim. <u>See</u> <u>Warren v. State</u>, 760 N.E.2d 608, 610 n.3 (Ind. 2002); <u>see also</u> <u>Dost v. State</u>, 812 N.E.2d 232, 234 n.2 (Ind. Ct. App. 2004).

12

There was probable cause to support the warrant. The Fourth Amendment to the Federal Constitution requires search warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." Probable cause exists if "based on the totality of the circumstances . . . there is a fair probability that a particular place contains evidence of a crime." Houser v. State, 678 N.E.2d 95, 99 (Ind. 1997). As the reviewing court, our duty is to determine whether "reasonable inferences drawn from the totality of the evidence support the determination of probable cause." State v. Spillers, 847 N.E.2d 949, 953 (Ind. 2006). Wildauer's informant had proven reliable in the past. The trash that Wildauer legally retrieved from Membres's house contained paraphernalia and fifty dollars worth of marijuana. These facts established probable cause of illegal drug activity at Membres's residence.

Nothing in the warrant violated the rule that warrants shall particularly describe the things to be seized. Warren v. State, 760 N.E.2d 608, 610 (Ind. 2002). Police officers do not have "unbridled discretion" to rummage through people's belongings. Id. In Warren, we concluded that language from a warrant authorizing officers to seize "any other indicia of criminal activity including but not limited to books, records, documents, or any other such items" violated the Fourth Amendment. Id. We held that the catchall language did not invalidate the entire warrant but required only that evidence seized pursuant to the invalid language be suppressed. Id. We find the language from the warrant in this case to be akin to that examined in United States v. Brown, 832 F.2d 991, 996 (7th Cir. 1987). In that case, the defendant argued that a warrant authorizing the seizure of "store receipts, fraudulent store receipts, bank records, typewriters, and letters of correspondence relating to submission of fraudulent insurance claims" was invalid because of its general nature. The Seventh Circuit noted, "[a] warrant may contain a catchall phrase as long as it sufficiently limits the discretion of the officers in executing the warrant." Id. (citing Andresen v. Maryland, 427 U.S. 463, 479–82 (1976)). Just as the warrant in Brown was limited to items "relating to submission of fraudulent insurance claims," the warrant here restricted its general catchall to items that "indicate[] or tend[] to indicate a violation or a conspiracy to violate" the Controlled Substances Act.

Moreover, Wildauer's affidavit specified that "drug traffickers commonly maintain books, records, receipts, notes, ledgers, air line tickets, money orders, and other papers relating [to] the transportation, ordering, sale, and distribution of controlled substances" and identified

13

the items seized that were not specified in the warrant. The probable cause affidavit, which was incorporated by reference, served to identify the scope of documents and other items that could properly be seized. See, e.g., Massachusetts v. Sheppard, 468 U.S. 981, 990 n.7 (1984); United States v. Johnson, 690 F.2d 60, 64 (3rd Cir. 1982) ("When a warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant."). Accordingly, the seized items were within the scope of the warrant.

## Conclusion

The trial court's denial of Membres's motion to suppress and its grant of the State's motion for turnover order are affirmed.

Shepard, C.J., and Dickson, J., concur.

Sullivan, J., dissents with separate opinion.

Rucker, J., concurs in part and dissents in part with separate opinion.

14

**Sullivan, Justice, dissenting.**

Our long-standing retroactivity rule dictates that new rules of criminal procedure apply to future trials and also to cases pending on direct appeal (or otherwise not yet final) where the issue was properly preserved in the trial court. Smylie v. State, 823 N.E.2d 679, 688-689 (Ind. 2005); Ludy v. State, 784 N.E.2d 459, 462 (Ind. 2003); Pirnat v. State, 607 N.E.2d 973, 974 (Ind. 1993).

Today the Court announces an exception to that retroactivity rule for cases involving warrantless searches of trash that implicate the new rule of Indiana Constitutional law announced in Litchfield v. State, 824 N.E.2d 356 (Ind. 2005). In such cases, the new rule applies only if the issue was raised in the trial court before the new rule was announced.

The warrantless search of Membres's trash in this case occurred on March 9, 2005. Litchfield was decided on March 24, 2005. Under the traditional retroactivity rule, the Litchfield rule would apply to Membres's future trial. But under today's decision, whether the defendant gets the advantage of the new rule depends on whether Membres raised the issue in the 14-day window prior to March 24. If so, the new rule applies and the evidence is inadmissible; if not, the evidence comes in. But often a prosecutor does not file charges in such a short time period. And even if the prosecutor here had done so, asking that defense counsel assess the vulnerability of the search and seizure to a novel constitutional challenge simply asks too much. The Court says that "[r]elief . . . should not turn on the relative speed with which a specific case reaches appellate resolution." I agree. But neither should relief turn on the relative speed at which an overworked prosecutor gets charges on file or an overworked defense attorney sits down to examine the case.

I also believe that the reasoning behind the course the Court takes today proceeds from two faulty premises: that our retroactivity rule is governed by Enlow v. State and that deterrence is the primary justification for the exclusionary rule.

1

While we are most certainly not required to do so, see Danforth v. Minnesota, 128 S.Ct. 1029 (2008), this Court has uniformly followed federal precedent in determining whether a new rule of state criminal procedure applies retroactively. The reason this Court adopted Enlow v. State, 261 Ind. 348, 303 N.E.2d 658 (1973), was explicitly to follow the United States Supreme Court's then-recent decision, Stovall v. Denno, 388 U.S. 293, 297 (1967). When the Supreme Court reversed its course and overruled Stovall in Griffith v. Kentucky, 479 U.S. 314 (1987), we again followed suit. Pirnat v. State, 600 N.E.2d 1342 (Ind. 1992), reh'g granted, 607 N.E.2d 973, 974 (Ind. 1993). See also Smylie v. State, 823 N.E.2d 679, 688-689 (Ind. 2005); Ludy v. State, 784 N.E.2d 459, 462 (Ind. 2003). The last time this Court relied on Enlow was in Rowley v. State, 483 N.E.2d 1078, 1082 (Ind. 1985), decided two years before Griffith. Since Griffith, we have relied on Griffith exclusively; since 1985, we have not cited to Enlow until today.

The Court justifies its refusal to apply Litchfield retroactively on its view that the objective of the exclusionary rule is deterrence. "[W]e do not exclude the products of unlawful searches and seizures because they are unreliable or immaterial or unduly prejudicial evidence. . . . We exclude [this evidence] because that is the only effective means of deterring improper intrusions into the privacy of all citizens." Slip. op. at 9. However, the exclusionary rule was adopted not only to deter police misconduct but also to protect the integrity of the judicial process and to protect the rights of criminal defendants. "If the property was secured by search and seizure under the pretext of a search warrant, which was invalid for any reason, then the property so seized could not be used as evidence against the appellant, and its admission over his objection was prejudicial error." Callender v. State, 193 Ind. 91, 138 N.E. 817, 818 (1922) (citations omitted). Callender's reliance on both article I, section 11 (prohibiting unreasonable searches and seizures) and article I, section 14 (prohibiting compelled self-incrimination) demonstrates purposes for the exclusionary rule that extend beyond deterrence to protecting the rights of the accused to due process. Andrew C. Krull, Turning Back the Clock: Why the 'Good Faith' Exception Was Not and Should Not Be Recognized in Indiana, Res Gestae, Oct. 2007, at 29, 33. In point of fact, Callender is silent about the effect of section 11 on police behavior. Id.

We should not create an exception for <u>Litchfield</u> to our long-standing rule on retroactivity based on the incorrect propositions that <u>Enlow</u> is precedent or that deterrence is the only purpose of the exclusionary rule.  I respectfully dissent.

**Rucker, Justice, concurring in result in part and dissenting in part.**

I agree that the trial court correctly denied Membres' motion to suppress. On this point I concur with the majority opinion. But the majority charts new territory to this Court's longstanding jurisprudence on the question of retroactivity. I would adhere to established precedent and as a result apply <u>Litchfield v. State</u>, 824 N.E.2d 356 (Ind. 2005), retroactively. On this issue I respectfully dissent.

**Discussion**

**I.**

In determining whether a new rule of state criminal procedure applies retroactively, the majority relies on <u>Enlow v. State</u>, 261 Ind. 348, 303 N.E.2d 658 (1973). In that case this Court applied a three-pronged test: "(a) the purpose to be served by the new standards[,] (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Slip op. at 8 (quoting <u>id.</u> at 659). But <u>Enlow</u> quoted <u>Stovall v. Denno</u>, 388 U.S. 293, 297 (1967), for this three-pronged test. And on this precise point <u>Stovall</u> has been overruled by <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321 (1987) (citing <u>Stovall</u> among other cases and declaring, "[R]etroactivity must be rethought."). In essence the majority today adopts as the Indiana rule long abandoned federal precedent on the issue of retroactivity. I see no reason to travel this path.

In a related vein, and perhaps more importantly, although this Court has acknowledged its independence to fashion its own rule of retroactivity, it has declined to do so. Instead this Court has adopted as this state's retroactivity rule the same rule articulated by the United States Supreme Court in <u>Teague v. Lane</u>, 489 U.S. 288 (1989), as refined in <u>Penry v. Lynaugh</u>, 492 U.S. 302, 313-14 (1989). See <u>Daniels v. State</u>, 561 N.E.2d 487, 489 (Ind. 1990). It is true that <u>Daniels</u> involved a case on collateral review, "[W]e elect to follow the approach of <u>Teague</u> and <u>Penry</u> in addressing the retroactivity of new law to cases on review pursuant to petitions for post-conviction relief under Indiana procedure." <u>Id.</u> But we have consistently applied the <u>Teague</u>/<u>Penry</u> rule to cases pending on direct appeal as well. See, e.g., <u>Coleman v. State</u>, 558

1

N.E.2d 1059, 1061 (Ind. 1990) (The new rule applies "to the direct appeal of a trial occurring before [the new rule was] decided so long as the appellant has preserved [the issue for appeal] by objecting at trial."); Pirnat v. State, 607 N.E.2d 973, 974 (Ind. 1993) (Decision announcing new rule applicable to defendant and others "whose cases were pending on direct appeal at the time [the case deciding the new rule] was decided. . . .").

Essentially, until today Indiana's rule on retroactivity – which is the same as the federal rule – was well established, "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." Smylie v. State, 823 N.E.2d 679, 687 (Ind. 2005),[1] cert. denied, 546 U.S. 976 (2005) (quoting Griffith, 479 U.S. at 328).

To support its abandonment of this state's long-standing authority on retroactivity the majority says that a different rule should apply where the exclusionary rule is at stake. I make two observations. First, the authority on which the majority relies[2] arises out of a jurisdiction that apparently has rejected the Teague retroactivity rule. See, e.g., State v. Knight, 678 A.2d 642, 652 (N.J. 1996) ("Although we have noted our agreement with some of the principles underlying Teague, we have continued to determine the retroactivity of state rules of law under the Linkletter [v. Walker, 381 U.S. 618 (1996)] test."); see also State v. Purnell, 735 A.2d 513, 521 (N.J. 1999) (declaring that the "applicable state and federal retroactivity standards differ."). The majority counters, "New Jersey's retroactivity rules are more permissive, not more restrictive, than Teague." Slip op. at 10. This may be true. But as demonstrated by two other cases handed down today, an application of the majority's new rule results in sustaining the trial court's denial of a motion to suppress evidence, while the opposite would be true if this state's existing rule were applied. See Bowles v. State, No. 49S04-0708-CR-310, ___ N.E.2d ___, ___

---

[1] As a matter of grace in Smylie we held that "a defendant need not have objected at trial in order to raise a Blakely claim on appeal inasmuch as not raising a Blakely claim before its issuance would fall within the range of effective lawyering." Smylie, 823 N.E.2d at 691. But cf. Coleman, 558 N.E.2d at 1061 (stating the general requirement that an appellant must object at trial to preserve the issue for appeal).

[2] Specifically, the majority cites to State v. Skidmore, 601 A.2d 729 (N.J. Super. Ct. App. Div. 1992). Slip op. at 9.

(Ind. 2008) (Rucker, J., dissenting); <u>Belvedere v. State</u>, No. 48A05-0611-CR-669, ___ N.E.2d ___, ___(Ind. 2008) (Rucker, J., dissenting). Second, contrary to the majority's claim, neither this Court nor the federal circuit courts have been hesitant about applying the <u>Teague</u> retroactivity rule to cases in which the exclusionary rule was at stake. <u>See, e.g.</u>, <u>Wilson v. State</u>, 514 N.E.2d 282, 284 (Ind. 1987) (declaring that the resolution of whether the new rule on the use of a defendant's post-<u>Miranda</u> silence is retroactive "is controlled by the recent decision in <u>Griffith v. Kentucky</u>," which was later incorporated into the <u>Teague</u> analysis); <u>Bintz v. Bertrand</u>, 403 F.3d 859, 865-67 (7th Cir. 2005) (applying <u>Teague</u> to determine whether the exclusion of testimonial out-of-court statements applies retroactively); <u>Mungo v. Duncan</u>, 393 F.3d 327, 335-36 (2d Cir. 2004) (same); <u>Brown v. Uphoff</u>, 381 F.3d 1219, 1225-27 (10th Cir. 2004) (same); <u>Winsett v. Washington</u>, 130 F.3d 269, 279-80 (7th Cir. 1997) (applying <u>Teague</u> to determine whether Illinois courts acted reasonably by not retroactively applying <u>Miranda</u>).

In sum, controlling authority simply does not support the majority's rationale for crafting a different rule of retroactivity applicable only to exclusionary rule cases. On this issue I respectfully dissent.

## II.

There appears to be no doubt that <u>Litchfield</u> represents a new rule of criminal procedure. The majority acknowledges as much, noting that <u>Litchfield</u> "'reshaped' the understanding of what constitutes a reasonable warrantless trash search." Slip op. at 7. I agree. And because Membres' case was not yet final when <u>Litchfield</u> was decided,[3] I would apply to this case the new rule of criminal procedure we announced in <u>Litchfield</u>.

Among other things, <u>Litchfield</u> determined that it is not reasonable for the police to search indiscriminately through people's trash. <u>Litchfield</u>, 824 N.E.2d at 363. In order for a search or seizure of a person's trash to be reasonable, two requirements must be met. First, trash

---

[3] The record shows that the search of Membres' trash was conducted March 10, 2005. App. at 43. Litchfield was decided March 24, 2005. And thereafter on October 14, 2005, Membres filed his notice of appeal. App. at 13.

3

must be retrieved in substantially the same manner as the trash collector would take it. Id. Second, the officer must possess an "articulable individualized suspicion" of illegal activity, "essentially the same as is required for a 'Terry stop' of an automobile." Id. at 364. Here, the first element was met. Officer Wildauer recovered the trash bags placed along the street for pick-up on the normal day for trash collection and without stepping onto Membres' property.

We turn then to whether Officer Wildauer had an articulable individualized suspicion of illegal activity at Membres' home to justify searching his trash. If the evidence fails to establish this requirement, then the officer could not have validly found the rolling papers and burnt marijuana cigarettes in the trash and could not have relied upon that evidence to establish probable cause for a search warrant for Membres' residence.

At the hearing on the motion to suppress, Officer Wildauer testified that an informant told him that Membres was dealing drugs from his house. According to the officer, "I've been using the informant for quite some time[;] he's always given me very good solid information that's turned into to [sic] be factual, reliable involved in other cases." Tr. at 17. When asked the number of times the informant had given him information, Officer Wildauer responded, "I'd say an access [sic] of forty (40) to fifty (50) times." Id. And that he "believed" that the information resulted in convictions "more than three" times. Id. at 17-18. Officer Wildauer also testified that other surveillance officers had "seen a vehicle that I commonly see . . . over there[,] a green Corvette convertible that I had associated with someone who's another target of mine I suspect of being a drug dealer." Id. at 18. When asked specifically what the informant told him, Officer Wildauer testified "[the informant] saw the other person over there and . . . according to him he's a drug dealer and said that they were dealing drugs. He just gave me information they were dealing drugs from the house." Id. Officer Wildauer's testimony continued, "[H]e was pretty sure they were selling marijuana out of there. The other target is known for his marijuana dealings." Id. at 19. "He just thought there were large quantities. He didn't specify to me the quantity he just said very large and suspected an excess of twenty (20) pounds of marijuana." Id.

"Reasonable suspicion is a less demanding standard than probable cause[,] not only in the sense that reasonable suspicion can be established with information that is different in quantity or

4

content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990). Even though different, reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Id. "Both factors – quantity and quality – are considered in the 'totality of the circumstances – the whole picture that must be taken into account when evaluating whether there is reasonable suspicion.'" Id. (citation omitted).

Unlike a tip from an anonymous informant, which is rarely sufficient, a tip from an identified and known informant can provide reasonable suspicion of criminal activity to justify a Terry stop when there are sufficient indicia of reliability. See id. at 330-31 (reiterating that an unverified tip from a known informant was sufficiently reliable to justify a Terry stop, although it might not have been reliable enough to establish probable cause); Adams v. Williams, 407 U.S. 143, 146 (1972) (Approving a Terry stop on the basis of a known informant who had given reliable information in the past, the Court stated a tip from a known informant is a "stronger case" than an anonymous telephone tip.). The indicia of reliability for a tip can be established in a number of ways, including whether: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted. State v. Spillers, 847 N.E.2d 949, 954 (Ind. 2006).

In this case an informant told Officer Wildauer that Membres was dealing marijuana from his home. The reliability of the informant's tip was established by Officer Wildauer's testimony that the informant had given the officer factual and reliable information in the past – in excess of forty to fifty times – and that the information had resulted in convictions on more than three occasions. Combined with the surveillance team's observation that an automobile belonging to a suspected drug dealer was parked at Membres' house, the informant's tip, although not sufficient to establish probable cause for the issuance of a search warrant, was enough under the totality of the circumstance to provide the police with reasonable suspicion that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). Thus, Officer Wildauer acted well

5

within the dictates of <u>Litchfield</u> to conduct a warrantless search of Membres' trash. Accordingly, the trial court properly denied Membres' motion to suppress. On this issue I therefore concur in result.