**Ronnie Q. HENDERSON,
Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–
Respondent.**

No. 20A03–1102–PC–108.

Court of Appeals of Indiana.

Aug. 29, 2011.

Transfer Denied Nov. 30, 2011.

Stephen T. Owens, State Public Defender, Jonathan Chenoweth, Deputy Public Defender, Indianapolis, IN, for Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Ronnie Henderson appeals the denial of his petition for post-conviction relief ("PCR petition"), which challenged his convictions for Class A felony dealing in cocaine and Class D felony possession of marijuana. We affirm.

### Issue

The sole restated issue we address is whether the decision of the United States Supreme Court in *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), applies retroactively to Henderson's case to require suppression of evidence found in his vehicle.

### Facts

We stated the facts in Henderson's direct appeal as follows:

> On April 22, 2006, Elkhart County Sheriff's Deputy Michael Wass was stopped at a traffic light and noticed Henderson, who was driving a nearby vehicle. After the deputy observed that Henderson's vehicle had a broken taillight and a cracked windshield that obstructed the view of the driver, he initiated a traffic stop. Henderson pulled into the driveway of a residence and jumped out of the vehicle. The deputy ordered Henderson to get back inside his vehicle and asked for his driver's license and registration. Henderson held the registration in his left hand and appeared to be searching for something with his right hand in between the front seats. Deputy Wass observed Henderson move his hand as if to throw something. The deputy became con-

> cerned for his safety but elected not to pursue the matter until backup arrived because he did not want to further upset Henderson.

> Henderson eventually produced his State-issued identification card and admitted to Deputy Wass that his driver's license was suspended, which the deputy confirmed to be true. As Henderson handed the deputy his identification card, he was nervous and his hands were shaking. The deputy arrested Henderson for driving with a suspended license and searched Henderson, finding "two very large rolls of money." Tr. p. 263. Henderson was then placed in the deputy's vehicle so that the deputy could begin the process of impounding Henderson's vehicle.

> Pursuant to department policy, Deputy Wass inventoried the van before it was impounded. The deputy discovered a sweatshirt and sweatpants on the front passenger seat, and when he moved the clothing he noticed a strong odor of marijuana. He then saw a brown bag and opened it, finding fifty-five grams of marijuana. He also found cocaine weighing 21.83 grams in multiple smaller bags.

> On April 26, 2006, the State charged Henderson with class A felony dealing in cocaine and class D felony possession of thirty or more grams of marijuana. On August 8, 2006, Henderson filed a motion to suppress the drug evidence based on the allegedly unlawful search of his vehicle. Following a hearing, the trial court denied Henderson's motion. A jury trial commenced on April 2, 2007, at which the trial court overruled Henderson's renewed objection to the admission of the drug evidence. On April 4, 2007, the jury found Henderson guilty as charged.

*Henderson v. State*, No. 20A04–0707–CR–372, slip op. at 2–3, 2008 WL 732274 (Ind. Ct.App. Mar. 20 2008), *trans. denied.*

On direct appeal, Henderson argued that the search of his vehicle violated both the United States and Indiana Constitutions. In resolving the federal Fourth Amendment question, this court held that the search was a valid vehicle search incident to arrest, pursuant to *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).[1] We relied upon the Indiana Supreme Court's interpretation of *Belton*, which was that the fact a defendant "may have been removed from the vehicle—or from the scene altogether—does not negate the officer's authority to search the car's interior." *Henderson*, slip op. at 4–5 (citing *Jackson v. State*, 597 N.E.2d 950, 957 (Ind.1992), *cert. denied* ). We also held that the search was reasonable under the Indiana Constitution, and thus affirmed Henderson's convictions. Our supreme court denied transfer in August 2008. Henderson did not file a petition for certiorari with the United States Supreme Court.

In April 2009, the Supreme Court decided *Gant*. There, four justices stated, "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. 332, 129 S.Ct. at 1723. Justice Scalia concurred, but stated that he would prefer a rule allowing a warrantless vehicle search incident to arrest "only when the object of the search is evidence of the crime for which the arrest was made, or of another crime that the officer has probable cause to believe oc-

curred." *Id.*, 129 S.Ct. at 1725 (Scalia, J., concurring).

On October 21, 2009, Henderson filed a pro se PCR petition, which was later amended by counsel. The petition alleged that, pursuant to *Gant*, the search of Henderson's vehicle was not a valid search incident to arrest and that Henderson should be allowed to rely upon *Gant* on collateral review. Henderson did not raise any Indiana Constitution issues in the PCR petition. On January 26, 2011, after conducting a hearing, the post-conviction court denied Henderson's petition. Henderson now appeals.

### Analysis

 Post-conviction proceedings provide defendants the opportunity to raise issues not known or available at the time of the original trial or direct appeal. *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind.2007), *cert. denied.* "In post-conviction proceedings, the defendant bears the burden of proof by a preponderance of the evidence." *Id.* We review factual findings of a post-conviction court under a "clearly erroneous" standard but do not defer to any legal conclusions. *Id.* We will not reweigh the evidence or judge the credibility of the witnesses and will examine only the probative evidence and reasonable inferences therefrom that support the decision of the post-conviction court. *Id.*

Here, the State does not contest that, under *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the search of Henderson's vehicle could not be considered a valid warrantless vehicle search incident to arrest. It also is clear that, for purposes of collateral review, Henderson's case became final well before *Gant* was decided. *See State v. Mohler*,

---

1. We did not address Henderson's argument that the search was not a valid inventory search under the Fourth Amendment.

694 N.E.2d 1129, 1133 (Ind.1998) (noting that conviction and sentence become final when availability of direct appeal to state courts has been exhausted and time for filing a certiorari petition has passed or such a petition has been denied). The question is whether Henderson can retroactively seek suppression of the evidence recovered from his vehicle, and hence reversal of his convictions, through a PCR petition.

 Although state courts are free to establish their own collateral review retroactivity rules independent of the rules for federal courts considering habeas corpus petitions, Indiana has chosen to adopt the federal retroactivity rule established by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Mohler,* 694 N.E.2d at 1132. Under *Teague,* new rules of criminal procedure generally are not retroactively available on collateral review. *Id.* at 1133. A case announces a new rule of criminal procedure if " 'it breaks new ground or imposes a new obligation on the . . . [g]overnment . . . [or] if the result was not dictated by precedent existing at the time the defendant's conviction became final,' . . . or if the result is 'susceptible to debate among reasonable minds. . . .' " *Id.* at 1132–33 (quoting *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070, and *Butler v. McKellar,* 494 U.S. 407, 415, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990)). New rules of criminal procedure may apply retroactively on collateral review only if (1) the new rule places certain kinds of primary, private conduct beyond the power of the criminal law to proscribe; or (2) if the new rule requires the observance of procedures that " 'are implicit in the concept or ordered liberty,' " or in other words, " 'watershed rules of criminal procedure' " that

are " 'central to an accurate determination of innocence or guilt.' " *Id.* (quoting *Teague,* 489 U.S. at 311, 313, 109 S.Ct. at 1076, 1077).

Henderson essentially contends that *Gant* did not establish a new rule of criminal procedure, at least as our supreme court has interpreted that phrase. He cites several cases in which he claims our supreme court held that a rule it announced was not "new" despite the existence of some confusion or debate about what precisely the "old" rule was. For example, in *Williams v. State,* 737 N.E.2d 734 (Ind.2000), our supreme court addressed a post-conviction challenge to an aiding in attempted murder conviction that raised a claim of fundamental error in the jury instructions. On direct appeal in 1993, this court had affirmed the conviction and rejected the defendant's claim of fundamental instructional error, which was based on *Spradlin v. State,* 569 N.E.2d 948 (Ind.1991). On post-conviction relief, our supreme court held we had erred in rejecting this claim, although it also stated that this error likely was attributable "to the admitted confusion surrounding the proper standard for attempted murder jury instructions, which existed during this time." *Williams,* 737 N.E.2d at 738. It also noted that in 2000, well after the direct appeal, the court had "explained for the first time how *Spradlin* applies to persons 'convict[ed] for the offense of aiding an attempted murder.' " *Id.* (quoting *Bethel v. State,* 730 N.E.2d 1242, 1246 (Ind.2000)). Still, our supreme court granted post-conviction relief to the defendant based on fundamental error in the jury instructions, holding that neither *Spradlin* nor *Bethel* stated new rules of criminal procedure.[2]

---

**2.** It is questionable whether *Williams* is still valid precedent, at least to the extent it granted postconviction relief on a claim of funda-

mental error. Two years after *Williams* was decided, our supreme court plainly held that claims of fundamental error can only be

*Id.* at 740 n. 16. Under this approach, Henderson contends that *Gant* did not establish a new rule, but merely clarified *Belton* and reaffirmed the proper scope of a search incident to arrest that was originally announced in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

Ultimately, however, we find our supreme court's approach to what constitutes a new rule of criminal procedure to be irrelevant in the context of this case. Instead, we conclude that this case is directly controlled by a decision from the Supreme Court that was issued three days after Henderson filed his opening brief in this appeal, *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 2432, 180 L.Ed.2d 285 (2011). In *Davis,* the Court addressed the question of whether a defendant whose case was not final before *Gant* was decided could rely upon *Gant* and the Fourth Amendment's exclusionary rule to suppress evidence that was discovered during a search that may have violated *Gant,* but which was conducted before *Gant* was decided. The Court ruled that the defendant could not rely upon the exclusionary rule in that situation.

■ The Court held, unequivocally, "Because suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety, we hold that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Davis,* —— U.S. ——, 131 S.Ct. at 2423–24. It observed that the case before it had arisen out of the

Eleventh Circuit, whose courts before *Gant* was decided had interpreted *Belton,* much as Indiana's courts did, "to establish a bright-line rule authorizing the search of a vehicle's passenger compartment incident to a recent occupant's arrest." *Id.,* 131 S.Ct. at 2428. Law enforcement had fully complied with this precedent when searching the defendant's vehicle. The Court also described *Gant* as establishing "a *new,* two-part rule" governing warrantless vehicle searches incident to arrest. *Id.,* 131 S.Ct. at 2425 (emphasis added). Noting that the sole purpose of the exclusionary rule is to deter future Fourth Amendment violations and is not a personal constitutional right, and that the law enforcement officers in the case had reasonably relied upon binding precedent in conducting the search, the Court held that the defendant could not rely upon the exclusionary rule. *Id.,* 131 S.Ct. at 2426, 2429. The Court also stated that, even though *Gant* in fact applied to the defendant's case and that it may have established that his Fourth Amendment rights had been violated, he still was not entitled to the remedy of exclusion of the illegally-seized evidence. *Id.,* 131 S.Ct. at 2431.

Presaging *Davis,* our supreme court reached a nearly identical conclusion regarding the scope of the exclusionary rule in *Membres v. State,* 889 N.E.2d 265 (Ind. 2008). The court specifically addressed the exclusionary rule as used to remedy violations of the Indiana Constitution in the seizure of evidence and its decision in *Litchfield v. State,* 824 N.E.2d 356 (Ind. 2005), which limited the ability of police to conduct trash searches. Similar to *Davis, Membres* was a case that was not final

---

raised on direct appeal, not in postconviction relief proceedings. *Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002). "[T]he fundamental error exception to the contemporaneous objection rule applies to direct appeals. In post-conviction proceedings, complaints

that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Id.*

before *Litchfield* was decided, and where police conducted a search before *Litchfield* was decided that may have violated *Litchfield.* Our supreme court held that the defendant could not seek suppression of the evidence under *Litchfield.* It stated that the exclusionary rule is one "that does not go to the fairness of the trial." *Membres,* 889 N.E.2d at 272. It also noted that "Indiana search and seizure jurisprudence, like federal Fourth Amendment doctrine, identifies deterrence as the primary objective of the exclusionary rule." *Id.* at 273. Because the search at issue had been "conducted in accordance with the law prevailing at the time," the court held that it would not serve the purposes of the exclusionary rule to allow a defendant to seek suppression of evidence based on a new search and seizure rule that was adopted after the search had occurred. *Id.* at 274. "[I]f a search was conducted in compliance with the law as announced by this Court at the time of the search, we see no affront to the dignity of the court in admitting the fruits of that search." *Id.*[3]

■ *Davis* and *Membres* are crystal clear as a matter of Fourth Amendment law and Indiana search and seizure jurisprudence. The rule they establish is that where police conduct a search that complies with binding precedent at the time of the search, but that precedent is overruled or altered after the search occurs, a defendant may not seek suppression of the evidence based on the change in the law. This rule applies regardless of whether or not a defendant's case is technically "final" for purposes of retroactivity analysis.

■ Here, as we held in our opinion on direct appeal, the search of Henderson's vehicle was valid under *Belton* and our supreme court's interpretation of *Belton,* as reflected in cases such as *Jackson v. State,* 597 N.E.2d 950, 957 (Ind.1992), *cert. denied.* The officer who conducted the search cannot be said to have engaged in any kind of "wrongdoing" in conducting the search. Thus, allowing Henderson to invoke the exclusionary rule to seek suppression of the evidence, based on the new rule announced in *Gant,* would be inconsistent with the rule's purpose. This would be the result, regardless of whether this case was on direct appeal or post-conviction review.

### Conclusion

Because Henderson cannot rely upon *Gant* to seek suppression of evidence that was recovered during a search that predated *Gant,* the post-conviction court properly denied Henderson's PCR petition. We affirm.

Affirmed.

ROBB, C.J., and BRADFORD, J., concur.

---

**3.** The *Membres* court allowed an exception to this general rule to a defendant who successfully litigates for a change in a rule, as an incentive for defendants to present a novel claim. *Membres,* 889 N.E.2d at 274. The *Davis* court was less clear on this point, but seemed to agree that a defendant who successfully litigates for a change in a rule may possibly be entitled to rely upon the exclusionary rule. *See Davis,* —— U.S. ——, 131 S.Ct. at 2433–34.