Jennings DAUGHERTY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A05–1103–CR–131.

Court of Appeals of Indiana.

Nov. 28, 2011.

---

Mark I. Cox, The Mark I. Cox Law Office, LLC, Richmond, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Jennings Daugherty appeals his convictions for possession of cocaine, as a Class B felony, and maintaining a common nuisance, as a Class D felony. Daugherty raises a single issue for our review, namely, whether the trial court abused its discretion when it admitted evidence seized pursuant to a search warrant.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On April 14, 2006, Sergeant Neal Van-Middlesworth prepared a thorough and detailed Affidavit for a Search Warrant. According to Sergeant VanMiddlesworth's affidavit:

> On 11–27–04 the affiant arrested Jennings Daugherty for operating while intoxicated. During a subsequent search incident to arrest[,] a [m]arijuana cigarette was located. Mr. Daugherty was additionally charged with Possession of Marijuana.
>
> On December 8th, 2005, the affiant helped serve a [s]earch warrant at 1106 Butler as a member of the Richmond SWAT team[ ] following an investigation by [o]fficers of the Richmond Police Department.
>
> On 4–5–06 the affiant spoke with neighbors, one house to the north of 1106 Butler Street. The neighbors advised that there has been considerable traffic to the rear of 1106 Butler Street with people entering the property at the rear through the gate of the privacy fence. The neighbors also advised that the people usually arrive and leave after a few minutes. They advised that the traffic usually increase[s] heavily after dark, usually after 9:00 P.M. This neighbor advised that this traffic is similar in volume to the time just before the [SWAT] Team [r]aided the house in December. The neighbor also advised that the resident[ ] he identified as Jennings Daugherty[ ] now has his trash picked up by a [b]rown older model Chevrolet pickup truck instead of leaving it out for the Sanitation Department trucks. He advised that Mr. Daugherty has been doing this since the SWAT Team [r]aided his house. The neighbor advised that Daugherty has installed new cameras on the rear of his house since the last [r]aid.
>
> As the affiant was leaving the alley he was approached by another neighbor

who[ ] advised there has been considerable traffic to the house the affiant was just behind (1106 Butler). He advised that he sees cars park on NW J Street, and people go into the house for a short amount of time. Names of [b]oth residents can be provided upon request.

While serving the [December 2005] warrant the affiant assisted in the recovery of several plants that the affiant recognized as [m]arijuana, paraphernalia used for the sale and consumption of [m]arijuana, and [c]ocaine. Officers also recovered two handguns and two [a]ssault [r]ifles with approximately one[-]thousand rounds of ammunition.

On 4–14–06[,] Captain Shake was patrolling in the alley behind 1106 Butler Street when he observed a blue Chevrolet pickup truck behind the residence. Captain Shake parked on NW L Street and watched the truck. Captain Shake observed a white male leave from behind the fence at the rear of 1106 Butler and approach the pickup. Captain Shake observed the male lift the hood of the truck and appear to work in the engine compartment. . . .

As Captain Shake was sitting on the lot of NW L Street with Officers Sutton and Longnecker (who were in the same unit), they observed the truck leave the lot of the Petro Gas Station on NW 5th Street. Officers Sutton and Longnecker began to follow the truck. Officer[ ] Sutton advised that he observed that the truck had a loud exhaust in violation of state law. The officers ran the license information from the registration from the plate. Officers observed a previous conviction for possession of [c]ocaine for William K. Smith on his driving record. At approximately 12:25 P.M. Officers Sutton and Longnecker performed a traffic stop on said truck at NW 14th and Holsapple Road. . . . The truck was found to be registered to William K. Smith at 2712 C Ave., New Castle, Indiana.

Officer Sutton performed a routine traffic investigation, which included verification of the exhaust violation and license status. While Officer Sutton was in this process Captain Shake spoke with Detective Cantrell of the Henry County Drug Task Force. Detective Cantrell advised that he is familiar with William K. Smith and an association with drugs. Captain Shake also observed that William K. Smith had a previous conviction for Possession of Cocaine on his driving record.

Officer Sutton concluded his traffic investigation and gave Smith the paperwork for the truck. As he did so Officer Sutton advised William K. Smith that he would like to continue to talk to him about another issue[;] however[,] Officer Sutton restated that it was consensual and that Smith was [f]ree to leave. Officer Sutton advised that William Smith was agreeable to that. At that point Officer Longnecker approached Sutton and advised him of the previously mentioned information that Captain Shake discovered.

Officer Sutton then . . . asked Mr. Smith to step from the vehicle for a search of his person. As Mr. Smith was doing this, Officer Sutton asked for consent to search the vehicle and advised him that he could refuse. Officer Sutton advised that William K. Smith gave him verbal consent to search the vehicle in the presence of Officer Longnecker.

During the search of Mr. Smith's person Officer Sutton found $500.00 in cash in his right front pocket and $326.00 in cash in his left front pocket.

Mr. Smith stood between Officer Sutton's unit and his vehicle as Officer Longnecker and Captain Shake

search[ed] the vehicle. Captain Shake searched the engine compartment where he had observed William K. Smith earlier working. Captain Shake removed the wing nut from an aftermarket air breather on the carburetor. There Captain [S]hake located a white and blue pharmacy bag. In the bag Captain [S]hake located a plastic container similar to a film canister containing several pills and a clear plastic baggie containing several pills that was tied off. There was also a clear plastic baggie containing an off[-]white powder. In a subsequent taped statement William K. Smith advised that he placed the items in the air intake breather because he had observed Captain Shake watching him. Officer Sutton advised that this is a common place to transport illegal narcotics based on his Police Highway Interdiction Training.

Officer Longnecker contacted Reid Pharmacy and found that the pills in the plastic container contained [sixty-four] (64) 40-[m]illigram Oxycontin tablets and the baggie contained [seventy] (70) 80-[m]illigram Oxycontin tablets and a Schedule II Controlled Substance. The off[-]white powder tested positive for cocaine in a Cobalt Reagent filed tester. Later the powder weighed approximately 14 grams at Richmond Police headquarters.

William K. Smith was questioned by [O]fficer Sutton about the Oxycontin and [c]ocaine and made several penal statements against his self-interest at Richmond Police Headquarters. Mr. Smith advised that he had purchased the Oxycontin in Indianapolis and had purchased the [c]ocaine from a male he knew as "Will." I know from the service of the previous search warrant at 1106 Butler Street that Jennings Daugherty goes by the nickname of "Will." Mr. Smith could not remember [s]treet names initially but was able to direct Officer Sutton to the house as Officer Sutton wrote out a map of the area. As they were going through the process, Mr. Smith was able to remember that the house was on Butler Street.

Mr. Smith described the house as a tan house with a privacy fence in the rear. Mr. Smith described the interior of the house. . . . The affiant recognizes the description as the interior of 1106 Butler Street based on his previous entry into that address. . . .

In a taped [s]tatement Mr. Smith advised that he has purchased [c]ocaine from that same individual at that residence three times in the last thirty days. Mr. Smith advised that he enters through the gate in the natural wood privacy fence at the rear of the residence. Mr. Smith stated that he enters the rear door of the kitchen. He described the living room being off to the right through an arch. Mr. Smith advised that "Will" goes up the stairs, which are next to the two rooms to the left, and gets [c]ocaine for the transaction. [T]his is consistent with what the affiant has observed of the interior of 1106 Butler Street.

In a search incident to arrest officers located another large amount of cash in Mr. Smith's wallet. Officer Sutton found $600.00 folded in one pocket. He found $500.00 folded in another pocket of the wallet. There was $335.00 in cash found in the traditional money slot of the wallet. Officer Longnecker overheard Mr. Smith say that he only makes $11,000.00 a year.

Appellant's App. at 121–24. The trial court granted Sergeant VanMiddlesworth's request for a search warrant of 1106 Butler Street.

On April 15, officers executed the search warrant at the address, which is Daugherty's residence. The officers had to force their entry as Daugherty refused them. Daugherty instead hid upstairs and, once the officers had entered, threatened to blow up the house and shoot the officers if they tried to arrest him. The officers discovered five separate packages of cocaine, digital scales, several plastic baggies, and other indications that Daugherty was running a notable drug operation from the residence. The officers arrested Daugherty.

That same day, the State charged Daugherty with one count of dealing in cocaine, as a Class A felony; possession of cocaine, as a Class B felony; and maintaining a common nuisance, as a Class D felony.[1] The State also alleged Daugherty to be an habitual offender. On January 2, 2009, Daugherty filed a motion to suppress the evidence on the basis that the State obtained the search warrant without probable cause. The trial court denied Daugherty's motion. At his ensuing trial, Daugherty objected to the State's evidence for the same reasons underlying his motion to suppress. The court overruled Daugherty's objection. The jury found Daugherty guilty of possession of cocaine, as a Class B felony, and maintaining a common nuisance, as a Class D felony. The jury also found Daugherty to be an habitual offender. The trial court entered its judgment of conviction and ordered Daugherty to serve an aggregate term of twenty-four and one-half years executed. This appeal ensued.

## DISCUSSION AND DECISION

 Daugherty challenges the admissibility of the State's evidence against him. Our standard of review of a trial court's findings as to the admissibility of evidence is an abuse of discretion. *Roush v. State*, 875 N.E.2d 801, 808 (Ind.Ct.App.2007). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

 Our supreme court has described our standard of review for the issuance of a search warrant as follows:

> In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* at 238–39, 103 S.Ct. 2317. A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Houser v. State*, 678 N.E.2d 95, 99 (Ind.1997). Although we review de novo the trial court's substantial basis determination, we nonetheless afford "significant deference to the magistrate's determination" as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination. *Id.* at 98–99.

*Jackson v. State*, 908 N.E.2d 1140, 1142 (Ind.2009) (alteration and omission original). Our supreme court further stated:

---

1. The State later dismissed its allegation of dealing in cocaine after "the cocaine ... was inadvertently destroyed." Appellant's App. at 146.

[T]he heart of the matter is not whether a court of review agrees or disagrees about the existence of probable cause sufficient to support the issuance of a search warrant; rather the issue is whether when viewed from a totality of the circumstances there was enough evidence before the issuing court that would allow the court to make that call.

*Id.* at 1144–45. Thus, our standard of review in determining whether sufficient probable cause supports the issuance of a search warrant is "de novo" with "significant deference." *Id.* at 1142, 1144–45.

Here, Daugherty's argument is three-fold. First, he asserts that the evidence seized from the December 2005 warrant was later suppressed and, therefore, those facts cannot serve as the basis for a subsequent warrant. Second, he contends that the two neighbors' comments to police were not corroborated and cannot establish probable cause. Third, Daugherty argues that Smith's statements regarding his relationship with Daugherty do not establish his credibility under the "statements . . . against his penal interest" doctrine because Smith had already been "caught 'red-handed.'" Appellant's Br. at 15. Daugherty's arguments are insufficient to demonstrate reversible error.

■ On April 14, 2006, officers witnessed Smith exit Daugherty's home. The officers then observed Smith access the engine compartment of his truck, a location which they knew to be consistent with the hidden transportation of contraband. While still under observation, Smith drove to a nearby gas station, where the officers initiated a traffic stop. During the course of that traffic stop, officers searched the engine compartment of Smith's vehicle—which they had just witnessed him access at Daugherty's residence—wherein they discovered contraband. For good measure, the officers also discovered more than $800 in cash in Smith's pockets and another $1435 in cash in Smith's wallet. Based on those unchallenged observations alone, the "common-sense" conclusion by the issuing magistrate was that there existed a "fair probability that contraband or evidence of a crime" would be found at Daugherty's residence. *See Jackson,* 908 N.E.2d at 1142; *see, e.g., Eaton v. State,* 889 N.E.2d 297, 299–300 (Ind.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 1986, 173 L.Ed.2d 1090 (2009). As such, sufficient probable cause supported the issuance of the search warrant, and we affirm the trial court's denial of Daugherty's attempts to have the evidence excluded.

Further, we agree with the trial court's analysis that Daugherty's reliance on *State v. Spillers,* 847 N.E.2d 949 (Ind.2006), is misplaced. In *Spillers,* our supreme court held that, where "the informant was caught 'red-handed' with drugs in his possession before naming his purported supplied . . . , his tip was less a statement against his penal interest than an obvious attempt to curry favor with the police." *Id.* at 956. In its order denying Daugherty's motion to suppress, the trial court concluded that *Spillers* did not control on these facts:

> Unlike in *Spillers,* there were additional facts to corroborate Smith's story. Here, law enforcement knew that Mr. Daugherty had been arrested on November 27, 2004[,] for Possession of Marijuana. The police had actually been to the Daugherty[ ] residence at 1106 Butler Street . . . on December 8, 2005, and had found illegal drugs, guns, and other items. And, additionally, two (2) different neighbors described people going in and out of the Daugherty[ ] residence and leaving only after a very brief time. Thus, unlike in *Spillers,* there was additional corroboration to support Smith's testimony in the Affida-

vit For Search Warrant. Further, there was no offer of leniency to Smith as there was [to the defendant in *Spillers* ] . . . .

Appellant's App. at 107–08. The trial court also concluded that Daugherty's assertion that the December 2005 evidence was inappropriately referenced in the April 2006 affidavit was a nonstarter:

> Such information was included to show that illegal drugs had been found at [Daugherty's] residence on a prior occasion. Judge Snow [who issued the December 2005 search warrant,] being a neutral and detached magistrate[,] found there was probable cause to grant the request. . . . Officers with warrant in hand found illegal drugs, guns, and other items during the search. At the time the information regarding the first search was included [in the April affidavit], officers believed the evidence was lawfully obtained since it had been seized pursuant to a judicially issued warrant. At the time the Affidavit was presented, the evidence from that first search had not yet been suppressed. Indeed, it was not until April 3, 2009, several years later, that the evidence seized pursuant to the first warrant and search was suppressed and that police learned that there was insufficient probable cause to search the residence on the first occasion. There is absolutely no evidence to suggest that the officers misled the court in [their] application for a search warrant [in April]. . . .

*Id.* at 109.

We agree with the trial court's analysis on both claims. The facts of this case are materially different from those in *Spillers*. And the April 2006 affidavit's reference to the December 2005 search, the fruits of which were later suppressed, does not vitiate or otherwise negate the other facts here that are sufficient to support a find-ing of probable cause. In sum, we affirm the admission of the State's evidence and Daugherty's convictions.

Affirmed.

RILEY, J., and MAY, J., concur.