## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 03 2020, 5:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEY FOR APPELLEE |
|---|---|
| Jennings Daugherty<br>Carlisle, Indiana | Ellen H. Meilaender<br>Supervising Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jennings Daugherty,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent* | June 3, 2020<br><br>Court of Appeals Case No.<br>19A-PC-1824<br><br>Appeal from the<br>Wayne Superior Court<br><br>The Honorable<br>Gregory A. Horn, Judge<br><br>Trial Court Cause No.<br>89D02-1311-PC-26 |

**Vaidik, Judge.**

# Case Summary

Jennings Daugherty appeals the denial of his petition for post-conviction relief. We affirm.

# Facts and Procedural History

The main issues in this appeal concern whether a warrant to search Daugherty's house, 1106 Butler Street in Richmond, was supported by probable cause. A sergeant with the Richmond Police Department prepared a probable-cause affidavit on April 14, 2006. The affidavit contains numerous allegations to support the issuance of the search warrant. We break down these allegations into five categories:

**(1) Daugherty's November 2004 arrest:**

> On 11-27-04 the affiant arrested Jennings Daugherty for operating while intoxicated. During a subsequent search incident to arrest[,] a [m]arijuana cigarette was located. Mr. Daugherty was additionally charged with Possession of Marijuana.

*Daugherty v. State*, 957 N.E.2d 676, 677 (Ind. Ct. App. 2011).

**(2) December 2005 search of 1106 Butler Street:**

> On December 8th, 2005, the affiant helped serve a [s]earch warrant at 1106 Butler as a member of the Richmond SWAT team[ ] following an investigation by [o]fficers of the Richmond Police Department.

* * * * *

> While serving the [December 2005] warrant the affiant assisted in the recovery of several plants that the affiant recognized as [m]arijuana, paraphernalia used for the sale and consumption of [m]arijuana, and [c]ocaine. Officers also recovered two handguns and two [a]ssault [r]ifles with approximately one[-]thousand rounds of ammunition.

*Id.* at 677, 678.

**(3) Neighbors' statements to police about "considerable traffic" at 1106 Butler Street:**

> On 4-5-06 the affiant spoke with neighbors, one house to the north of 1106 Butler Street. The neighbors advised that there has been considerable traffic to the rear of 1106 Butler Street with people entering the property at the rear through the gate of the privacy fence. The neighbors also advised that the people usually arrive and leave after a few minutes. They advised that the traffic usually increase[s] heavily after dark, usually after 9:00 P.M. This neighbor advised that this traffic is similar in volume to the time just before the [SWAT] Team [r]aided the house in December. The neighbor also advised that the resident[ ] he identified as Jennings Daugherty[ ] now has his trash picked up by a [b]rown older model Chevrolet pickup truck instead of leaving it out for the Sanitation Department trucks. He advised that Mr. Daugherty has been doing this since the SWAT Team [r]aided his house. The neighbor advised that Daugherty has installed new cameras on the rear of his house since the last [r]aid.
>
> As the affiant was leaving the alley he was approached by another neighbor who[ ] advised there has been considerable traffic to the house the affiant was just behind (1106 Butler). He advised that he sees cars park on NW J Street, and people go into

the house for a short amount of time. Names of [b]oth residents can be provided upon request.

*Id.* at 677.

**(4) Police officers' personal observations on April 14, 2006, of incident underlying this appeal:**

On 4-14-06[,] Captain Shake was patrolling in the alley behind 1106 Butler Street when he observed a blue Chevrolet pickup truck behind the residence. Captain Shake parked on NW L Street and watched the truck. Captain Shake observed a white male leave from behind the fence at the rear of 1106 Butler and approach the pickup. Captain Shake observed the male lift the hood of the truck and appear to work in the engine compartment....

As Captain Shake was sitting on the lot of NW L Street with Officers Sutton and Longnecker (who were in the same unit), they observed the truck leave the lot of the Petro Gas Station on NW 5th Street. Officers Sutton and Longnecker began to follow the truck. Officer[ ] Sutton advised that he observed that the truck had a loud exhaust in violation of state law. The officers ran the license information from the registration from the plate. Officers observed a previous conviction for possession of [c]ocaine for William K. Smith on his driving record.

At approximately 12:25 P.M. Officers Sutton and Longnecker performed a traffic stop on said truck at NW 14th and Holsapple Road.... The truck was found to be registered to William K. Smith at 2712 C Ave., New Castle, Indiana.

Officer Sutton performed a routine traffic investigation, which included verification of the exhaust violation and license status.

While Officer Sutton was in this process Captain Shake spoke with Detective Cantrell of the Henry County Drug Task Force. Detective Cantrell advised that he is familiar with William K. Smith and an association with drugs. Captain Shake also observed that William K. Smith had a previous conviction for Possession of Cocaine on his driving record.

Officer Sutton concluded his traffic investigation and gave Smith the paperwork for the truck. As he did so Officer Sutton advised William K. Smith that he would like to continue to talk to him about another issue[;] however [,] Officer Sutton restated that it was consensual and that Smith was [f]ree to leave. Officer Sutton advised that William Smith was agreeable to that. At that point Officer Longnecker approached Sutton and advised him of the previously mentioned information that Captain Shake discovered.

Officer Sutton then ... asked Mr. Smith to step from the vehicle for a search of his person. As Mr. Smith was doing this, Officer Sutton asked for consent to search the vehicle and advised him that he could refuse. Officer Sutton advised that William K. Smith gave him verbal consent to search the vehicle in the presence of Officer Longnecker.

During the search of Mr. Smith's person Officer Sutton found $500.00 in cash in his right front pocket and $326.00 in cash in his left front pocket.

Mr. Smith stood between Officer Sutton's unit and his vehicle as Officer Longnecker and Captain Shake search[ed] the vehicle. Captain Shake searched the engine compartment where he had observed William K. Smith earlier working. Captain Shake removed the wing nut from an aftermarket air breather on the carburetor. There Captain [S]hake located a white and blue pharmacy bag. In the bag Captain [S]hake located a plastic

container similar to a film canister containing several pills and a clear plastic baggie containing several pills that was tied off. There was also a clear plastic baggie containing an off[-]white powder. In a subsequent taped statement William K. Smith advised that he placed the items in the air intake breather because he had observed Captain Shake watching him. Officer Sutton advised that this is a common place to transport illegal narcotics based on his Police Highway Interdiction Training.

Officer Longnecker contacted Reid Pharmacy and found that the pills in the plastic container contained [sic] [sixty-four] (64) 40-[m]illigram Oxycontin tablets and the baggie contained [seventy] (70) 80-[m]illigram Oxycontin tablets and a Schedule II Controlled Substance. The off[-]white powder tested positive for cocaine in a Cobalt Reagent fi[el]d tester. Later the powder weighed approximately 14 grams at Richmond Police headquarters.

*Id.* at 678-79.

**(5) William K. Smith's statements to police about the April 14, 2006 incident:**

William K. Smith was questioned by [O]fficer Sutton about the Oxycontin and [c]ocaine and made several penal statements against his self-interest at Richmond Police Headquarters. Mr. Smith advised that he had purchased the Oxycontin in Indianapolis and had purchased the [c]ocaine from a male he knew as "Will." I know from the service of the previous search warrant at 1106 Butler Street that Jennings Daugherty goes by the nickname of "Will." Mr. Smith could not remember [s]treet names initially but was able to direct Officer Sutton to the house as Officer Sutton wrote out a map of the area. As they were going through the process, Mr. Smith was able to remember that the house was on Butler Street.

Mr. Smith described the house as a tan house with a privacy fence in the rear. Mr. Smith described the interior of the house.... The affiant recognizes the description as the interior of 1106 Butler Street based on his previous entry into that address....

In a taped [s]tatement Mr. Smith advised that he has purchased [c]ocaine from that same individual at that residence three times in the last thirty days. Mr. Smith advised that he enters through the gate in the natural wood privacy fence at the rear of the residence. Mr. Smith stated that he enters the rear door of the kitchen. He described the living room being off to the right through an arch. Mr. Smith advised that "Will" goes up the stairs, which are next to the two rooms to the left, and gets [c]ocaine for the transaction. [T]his is consistent with what the affiant has observed of the interior of 1106 Butler Street.

In a search incident to arrest officers located another large amount of cash in Mr. Smith's wallet. Officer Sutton found $600.00 folded in one pocket. He found $500.00 folded in another pocket of the wallet. There was $335.00 in cash found in the traditional money slot of the wallet. Officer Longnecker overheard Mr. Smith say that he only makes $11,000.00 a year.

*Id.* at 679.

[3]     The trial court granted the sergeant's request for a search warrant, and Daugherty's house was searched the next day, April 15, 2006. Police officers discovered five separate packages of cocaine, digital scales, several plastic baggies, and other indications that Daugherty was running a "notable" drug operation from his house. *Id.* at 680.

[4]     The next day, the State charged Daugherty with Class B felony possession of cocaine and Class D felony maintaining a common nuisance.[1] The State also alleged that Daugherty was a habitual offender. In January 2009, Daugherty filed a motion to suppress the evidence found during the search of his house, arguing that the search warrant was not supported by probable cause. *See* Appellant's Direct Appeal App. pp. 94-104. The trial court denied Daugherty's motion to suppress. At the jury trial, Daugherty renewed his objection to the admission of the evidence found during the search of his house, which the trial court overruled. The jury found Daugherty guilty of both counts and also found him to be a habitual offender. The trial court sentenced him to an aggregate term of twenty-four-and-a-half years.

[5]     On direct appeal, Daugherty challenged the admission of evidence found during the search of his house. He argued that the search warrant was not supported by probable cause and challenged three parts of the affidavit: (1) the December 2005 search of his house; (2) the neighbors' statements to police about "considerable traffic" at his house; and (3) Smith's statements to police about the April 14, 2006 incident. *Daugherty*, 957 N.E.2d at 681. We held that even if these parts were excluded from the affidavit, the police officers' personal observations of Smith on April 14, 2006—alone—supported the issuance of the search warrant:

---

[1] The State also charged Daugherty with Class A felony dealing cocaine, but it later dismissed that count because the cocaine used to support that charge was inadvertently destroyed.

On April 14, 2006, officers witnessed Smith exit Daugherty's home. The officers then observed Smith access the engine compartment of his truck, a location which they knew to be consistent with the hidden transportation of contraband. While still under observation, Smith drove to a nearby gas station, where the officers initiated a traffic stop. During the course of that traffic stop, officers searched the engine compartment of Smith's vehicle—which they had just witnessed him access at Daugherty's residence—wherein they discovered contraband. For good measure, the officers also discovered more than $800 in cash in Smith's pockets and another $1435 in cash in Smith's wallet. **Based on those unchallenged observations alone**, the "common-sense" conclusion by the issuing magistrate was that there existed a "fair probability that contraband or evidence of a crime" would be found at Daugherty's residence. As such, sufficient probable cause supported the issuance of the search warrant, and we affirm the trial court's denial of Daugherty's attempts to have the evidence excluded.

*Id.* (emphasis added). Accordingly, we affirmed Daugherty's convictions.

[6] In 2015, Daugherty filed a pro se petition for post-conviction relief, which he amended in 2018, raising claims of ineffective assistance of trial and appellate counsel. At the August 2018 evidentiary hearing, Daugherty's trial and appellate counsel testified. In addition, Daugherty identified several exhibits, but he never asked the post-conviction court to admit them. Accordingly, they were not admitted.

[7] In February 2019, while his petition was still pending, Daugherty asked the post-conviction court to correct some "omissions" in the transcript of his evidentiary hearing. Appellant's P-C App. Vol. III p. 71. The post-conviction

court listened to the recording and corrected some "typographical errors" but otherwise found that the transcript "fully and accurately transcribed the testimony as presented." *Id.* at 73. In July 2019, the post-conviction court entered an order denying Daugherty relief.

[8] Thereafter, Daugherty, pro se, filed a notice of appeal. He asked the post-conviction court for a copy of the electronic recording of his evidentiary hearing; however, the court, noting that it had already listened to the recording and made some minor corrections to the transcript, found that there was "no just or reasonable reason to replace the transcript with a copy of the electronic recording" and denied Daugherty's request. *Id.* at 75. In September 2019, Daugherty asked this Court to correct the transcript of his evidentiary hearing or order the post-conviction court to provide him a copy of the electronic recording, but we denied his request. *See Order*, No. 19A-PC-1824 (Ind. Ct. App. Sept. 11, 2019). In February 2020, Daugherty again asked this Court to correct the transcript of his evidentiary hearing or allow him to purchase a recording of the hearing, and we again denied his request. *See Order*, No. 19A-PC-1824 (Ind. Ct. App. Mar. 10, 2020).

# Discussion and Decision

[9] Daugherty appeals the denial of his petition for post-conviction relief. A defendant who files a petition for post-conviction relief has the burden of establishing the grounds for relief by a preponderance of the evidence. *Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014). If the post-conviction court denies

relief, and the petitioner appeals, the petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 269.

# I. Post-Conviction Court Error

[10] Daugherty contends that the post-conviction court committed two procedural errors. First, Daugherty argues that the post-conviction court erred by not admitting his exhibits into evidence. We initially note that Daugherty does not tell us what exhibits the court should have admitted. However, they appear to be records from his previous cases. In any event, Daugherty claims that by not admitting the exhibits, the post-conviction court was making "an all out effort" to keep this Court from seeing them because then we would know that the trial court did not actually have probable cause to issue the search warrant. Appellant's Br. p. 36. There is simply no evidence to prove that the post-conviction court had such a plan. Instead, the record reveals that while Daugherty identified his exhibits, he never asked the court to admit them. After the first witness testified, the court mentioned that none of the exhibits identified during the testimony had been admitted, but Daugherty didn't take the hint. *See* P-C Tr. p. 36; *see also* Appellant's P-C App. Vol. II p. 24 (post-conviction-court order: "Daugherty made reference to numerous exhibits during the postconviction relief hearing but never offered their admittance into evidence and none were, ultimately, admitted."). Moreover, as we explain more fully below, even assuming that Daugherty's past cases do not establish

probable cause to issue the search warrant, there is still sufficient evidence to support the issuance of the search warrant.

[11] Daugherty next argues that the post-conviction court erred "when it left out relevant parts of the PCR hearing dialogue from the PCR transcripts." Appellant's Br. p. 36. This issue has been addressed twice by the post-conviction court and now three times by this Court. Simply put, Daugherty has given us no reason to believe that the transcript was not "fully and accurately transcribed," as found by the post-conviction court.

## II. Ineffective Assistance of Counsel

[12] Daugherty next contends that he received ineffective assistance of counsel. When evaluating a defendant's ineffective-assistance-of-counsel claim, we apply the well-established, two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984). *Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019). The defendant must prove that (1) counsel rendered deficient performance, meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms, and (2) counsel's deficient performance prejudiced the defendant, i.e., but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.*

[13] Daugherty first argues that his trial counsel was ineffective for failing to get the trial court to disregard four parts of the probable-cause affidavit: (1) his November 2004 arrest; (2) the December 2005 search of his house; (3) the neighbors' statements to police about "considerable traffic" at his house; and (4)

Smith's statements to police about the April 14, 2006 incident. *See* Appellant's Br. pp. 18-27. Daugherty, however, cannot establish prejudice. On direct appeal, this Court held that even if the other parts of the probable-cause affidavit were disregarded, the police observations of Smith alone supported the issuance of the search warrant. *Daugherty*, 957 N.E.2d at 681. Notably, Daugherty did not seek rehearing or transfer. Because there was sufficient probable cause in the affidavit to support the issuance of the search warrant even disregarding the other parts, there is no reasonable probability that the motion to suppress would have been granted. Trial counsel was not ineffective on this ground.

[14] Daugherty next argues that his appellate counsel was ineffective for "fail[ing] to contact [him] or his trial counsel prior to producing the Appellant's Brief on Direct Appeal." Appellant's Br. p. 6; *see also id.* at 16, 41. The record, however, does not support this claim. At the post-conviction hearing, appellate counsel testified that he was "sure" he talked with trial counsel about possible issues to raise on appeal, as was his policy. *See* P-C Tr. pp. 38-39. Appellate counsel also testified that he thought he sent Daugherty a letter in prison, as was his policy, and that Daugherty had sent him "a couple of letters" about what issues to raise on appeal. *Id.* at 39. Daugherty has failed to establish that appellate counsel was

ineffective for failing to consult with him or his trial counsel. We therefore affirm the post-conviction court.[2]

[15]     Affirmed.

May, J., and Robb, J., concur.

---

[2] Daugherty also raises claims of prosecutorial misconduct and "abuse of judicial discretion." Appellant's Br. p. 42. However, these freestanding issues are not available on post-conviction review. *See Martin v. State*, 760 N.E.2d 597, 599 (Ind. 2002).